Larry E. Altenbrun, WSBA No. 31475
Jeremy B. Jones, WSBA No. 44138
NICOLL BLACK & FEIG PLLC
1325 Fourth Avenue, Suite 1650
Seattle, WA 98101
Tel: (206) 838-7555
Fax: (206) 838-7515
laltenbrun@nicollblack.com
jjones@nicollblack.com
Attorneys for Defendants Ridge Contracting, Inc. and
Ridge Equipment, LLC

THE HONORABLE SHARON L. GLEASON

UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| TUG BLARNEY, a Washington limited liability company; DOUGLAS HILTY, an individual; ED LYDA, an individual; ROGER KENOYER, an individual; and NICK HUMLICK, an individual, | IN ADMIRALTY<br><br>**NO. 3:12-CV-00097-SLG** |
| Plaintiffs,<br>v.<br>RIDGE CONTRACTING, INC., an Alaska corporation, RIDGE EQUIPMENT, LLC, an Alaska limited liability company, *in personam,* | **RIDGE CONTRACTING, INC. AND RIDGE EQUIPMENT, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| Defendant. | |
| RIDGE CONTRACTING, INC., an Alaska corporation,<br>Third-Party Plaintiff,<br>v.<br>C&K MARINE LLC, an Alaska limited liability company,<br>Third-party Defendant /<br>Counter-Claimant and<br>Cross-Claimant. | |

## I.    INTRODUCTION AND RELIEF REQUESTED

This action concerns a dispute arising from Third-Party Defendant C&K Marine LLC's ("C&K") failure to perform a contract as agreed. C&K contracted with Ridge Contracting, Inc. There were four phases to the contract. Phase I involved the transportation of construction

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Case 3:12-cv-00097-SLG   Document 83   Filed 11/06/13   Page 1 of 38

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

NICOLL BLACK & FEIG PLLC

1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

1  equipment from Seattle and Anchorage to Nome and Alakanuk, Alaska. C&K failed to

2  complete the contract because its tugboat, the ARIES, sank for no apparent reason in ordinary

3  weather conditions. When the tug sank, the barge carrying Ridge Contracting's equipment was

4  anchored securely to the sea floor via the ARIES' tow cable. C&K arranged for another tug that

5  was in its custody and control, the BLARNEY, to pick up the barge and transport it to Nome.

6  C&K breached Phase I of the contract with Ridge Contracting because it failed to complete the

7  shipment to Alakunak. C&K also failed to complete any of the other phases of the contract.,

8  C&K, however, did not return any portion of the funds that Ridge had paid, including $100,000

9  that was advanced for payment of phases that were not even started. Instead, C&K sued Ridge

10  in this lawsuit for salvage and sought one of the higher salvage awards ever rewarded.

11      In a misguided attempt to avoid complications related to C&K's contractual obligations

12  to Ridge Contracting, this action was initiated by a holding company affiliated with C&K, Tug

13  Blarney LLC. For the same reasons, Ridge Equipment, a holding company associated with

14  Ridge Contracting, was added to this action as a defendant. Neither of these holding companies

15  have any real connection to the claims asserted in this action. The principle dispute is between

16  C&K and Ridge Contracting, and that is the focus of this Motion.

17      Recently, C&K and Tug Blarney LLC initiated a related action which is now pending in

18  the U.S. District Court for the Western District of Washington. Although C&K and Tug Blarney

19  LLC previously argued their actions related to the sinking of the ARIES were purely voluntary,

20  in the related action they now admit that their actions were undertaken, at least in part, due to

21  preexisting obligations to the hull and machinery underwriters of the ARIES and her tow, Barge

22  KRS 240-5. That admission is fatal to the salvage claims asserted in this action.

23      In this Motion, Ridge Contracting seeks summary judgment in its favor on its contract

24  claims against C&K. Additionally, both Ridge Contracting and Ridge Equipment seek

25  summary judgment dismissing the salvage claims asserted against them. This Motion seeks the

26  following relief:

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Case 3:12-cv-00097-SLG   Document 83   Filed 11/06/13   Page 2 of 38

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555  Fax: (206) 838-7515

1.     Contract Claims

Ridge Contracting seeks summary judgment in its favor on its contract claims against C&K for four reasons. First, the controlling contract required C&K to defend, indemnify, and hold Ridge Contracting harmless against any and all claims arising out of or connected to the sinking of the ARIES and the damage to the Barge KRS 240-5. C&K has breached this provision.

Second, the contract required C&K to provide salvage services at an agreed-upon rate. C&K has instead sought the award of a "pure" salvage claim, thereby breaching the contract and damaging Ridge Contracting. Accordingly, Ridge Contracting seeks summary judgment finding that C&K breached the contract, dismissing C&K's claim for salvage with prejudice, and awarding Ridge Contracting its damages as proved at trial.

Third, the controlling contract required C&K to transport Ridge Contracting's cargo as agreed. C&K failed to do so, thereby breaching the contract and damaging Ridge Contracting. Accordingly, Ridge Contracting seeks summary judgment finding that C&K breached the contract and awarding damages as proved at trial.

Fourth, the controlling contract required C&K to obtain and maintain insurance providing coverage for its contractual obligation to defend and indemnify Ridge Contracting. C&K failed to do so, thereby breaching the contract and damaging Ridge Contracting. Accordingly, Ridge Contracting seeks summary judgment declaring that C&K breached the contract and awarding Ridge its damages as proved at trial.

2.     Salvage Claims

Ridge Contracting and Ridge Equipment seek summary judgment dismissing the salvage claims with prejudice for four reasons. First, where parties agree to pay for salvage based upon a contract rate, a claim for "pure" salvage, such as the one brought here, is barred. Accordingly, C&K is barred from recovering a salvage award. Tug Blarney LLC cannot recover either, because its involvement in the recovery effort, if any, was undertaken at the

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

direction of C&K. As explained below, Tug Blarney LLC had no control over the salving vessel, and therefore could take no action with respect to the vessel, whether voluntary or not. Accordingly, the salvage claims of C&K and Tug Blarney LLC against Ridge Contracting should be dismissed with prejudice.

Second, a salvage award can only be sought from those parties who have a direct pecuniary interest in the property allegedly salved. Although Ridge Equipment was the nominal owner of some of the property allegedly salved, it had leased this property to Ridge Contracting. Pursuant to the terms of the lease agreement, Ridge Contracting bore the risk of loss to that property. If the property had been lost, Ridge Equipment would not have been harmed. As a result, Ridge Equipment did not benefit from the alleged salvage. For these reasons, all salvage claims against Ridge Equipment should be dismissed with prejudice.

Third, a salvage claim requires that the service be voluntarily rendered. Here, it is undisputed that C&K had a preexisting duty to safely transport the cargo pursuant to the contract of affreightment with Ridge Contracting. It is also undisputed that C&K had a preexisting duty to redeliver the barge in good condition to her owner pursuant to the terms of the charter party agreement in force at the time of the alleged salvage. It is further undisputed that C&K and Tug Blarney LLC had a preexisting duty to protect the barge from further loss or damage pursuant to the sue and labor obligations of the barge's insurance policy. For these reasons, C&K and Tug Blarney LLC are barred from recovering a salvage award. Accordingly, the salvage claims asserted by C&K and Tug Blarney LLC against both Ridge Contracting and Ridge Equipment should be dismissed with prejudice.

Fourth, it is well-established that a person who contributes to place property in danger cannot then claim a reward for rescuing it. To the extent that the property allegedly salved was in any danger, it is undisputed that it was placed in danger due to the loss of C&K's tug ARIES and damage to C&K's Barge KRS 240-5. C&K is presumed at fault for these casualties. C&K cannot be allowed to claim a salvage award for recovering the very same barge which it holed

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Case 3:12-cv-00097-SLG   Document 83   Filed 11/06/13   Page 4 of 38

and left stranded. Accordingly, C&K's salvage claims against both Ridge Contracting and Ridge Equipment should be dismissed with prejudice.

## II.     EVIDENCE RELIED UPON

This motion is based upon the legal authorities cited herein, the Declaration of Jeremy B. Jones, the exhibits attached thereto, and the pleadings, affidavits, and documents previously filed in this matter and referenced herein.

## III.     FACTS

**A.     The Charter & Freight Agreement.**

In the summer of 2011, Ridge Contracting was engaged to work on two construction projects in Alakanuk, Alaska, a small village located on the Yukon River roughly fifteen miles from the Bering Sea. (Decl. of Jeremy B. Jones ¶ 3 & Ex. 1 (hereinafter "McLaughlin Dep.") at 15:11-16-8.) One project involved work related to the relocation of Alakanuk's airport, while the other involved work related to the construction of a school. (Id.)

In furtherance of these projects, on May 6, 2011, Ridge Contracting entered into a Charter & Freight Agreement C&K to transport Ridge Contracting's equipment by barge. (Decl. of Markos Scheer at Exhibit C (Dkt. #78-3); (Mem. in Support of Mot. for Summ. J. (Dkt. # 77) 3:8-10.) The relevant terms of the Charter and Freight Agreement are discussed below.

1.     The Scope of Work.

Regarding the scope of the work to be performed, the Charter and Freight Agreement provides that C & K would perform the transportation "in four phases." (Charter and Freight Agreement at Clause 1.) In Phase I, "C & K will mobilize a Tug to transport equipment, supplies and materials from Seattle, Washington, pick up additional cargo for Ridge at Anchorage, Alaska, transit to Nome, Alaska and finally to AA [Alakanuk, Alaska] for unloading." (Id. at Clause 2.) The Charter and Freight Agreement further provides that during Phase 1, C & K would "put in at Dutch Harbor to get fuel and unload third party freight." (Id.) In Phases II and III, C&K was to transport gravel and rock from Nome and St. Mary's to

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Case 3:12-cv-00097-SLG Document 83   Filed 11/06/13   Page 5 of 38

various worksites in Alakanuk, as well as transport certain equipment from Alakanuk back to Nome. (Id. at Clauses 3-4.) In Phase IV, C&K was to transport additional supplies from Seattle to Alakanuk. (Id. at Clause 5.) Pursuant to the terms of the agreement, Ridge Contracting paid C&K a mobilization fee of $122,000 for the performance of Phase I, and an advance deposit of $100,000 for the performance of Phases II and III. (Id. at Clauses 2.2, 6.4-6.5; Jones Decl. ¶ 4 & Ex. 2 (hereinafter "Kennedy Dep.") at 94:6-12.)

2.      Liabilities and Indemnity.

The Charter and Freight Agreement contains an indemnity provision, which provides, in relevant part:

> Notwithstanding anything else contained in this Agreement, Ridge [Contracting] shall not be responsible for loss of or damage to the property (including owned, leased, or rented property) of C&K or of their contractors and sub-contractors, including any Tug . . . and C&K shall indemnify, protect, defend, and hold harmless Ridge [Contracting] from any and all claims, costs, expenses, actions, proceedings, suits, demands and liabilities arising out of or in connection with such loss [or] damage . . . .

(Charter and Freight Agreement Clause 10.1.) The first part of the clause limits Ridge Contracting's liability: "Ridge [Contracting] shall not be responsible for loss of or damage to the property (including owned, leased, or rented property) of C&K . . . ."  (Id.) The second part of the clause sets forth C&K's obligation to defend and indemnify Ridge Contracting: "C&K shall indemnify, protect, defend, and hold harmless Ridge [Contracting] from any and all claims, costs, expenses, actions, proceedings, suits, demands and liabilities arising out of or in connection with such loss [or] damage . . . ." (Id.)

The indemnity provision is broader than the liability provision. It extends not only to claims for loss or damage to C&K's property, but also to any liability "arising out of or in connection with" the loss of or damage to C&K's property. (Id.) Here, as explained below, there is no doubt that the ARIES was lost and the Barge KRS 240-5 damaged, and there is no question that the instant salvage claims arise out of or are connected to that loss and damage.

\\\\

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Case 3:12-cv-00097-SLG   Document 83   Filed 11/06/13   Page 6 of 38

3.     Insurance.

The Charter and Freight Agreement provides that the parties agree to obtain and maintain certain insurance coverage. (Id. Clause 18.) Pursuant to the terms of the agreement, unless provided for in a protection and indemnity policy, C&K must obtain and maintain comprehensive general liability insurance "including contractual liability coverage for C&K's obligations hereunder to defend and/or indemnify Ridge [Contracting], with aggregate limits of not less than $5,000,000." (Id. at Exhibit D.) It is undisputed that C&K failed to maintain such coverage. (See Jones Decl. ¶ 10 & Ex. 8.)

4.     Vessels to be Utilized.

Regarding the vessels to be utilized to perform the agreement, the Charter and Freight Agreement provided that "C&K shall before and at the date of commencement of the Tug [sic] and throughout the Agreement term exercise due diligence to make and maintain the Tug tight, staunch, strong in good order and condition and, without prejudice to the generality of the foregoing in every way fit to operate effectively at all times for the services as stated." (Id. Clause 11.) The Charter and Freight Agreement did not require that a particular tug be utilized and recognizes that multiple tugs will be required. (See id. Clause 2, 4, 5.) Moreover, the Charter and Freight Agreement grants either party the right to bring in additional tugs to perform Phase III (Id. Clause 4.2.)

5.     Salvage.

In the event the cargo needed to be salved, the Charter and Freight Agreement provided that "Salvage services or assistance rendered to the venture by another vessel owned by or in the service of C&K shall be paid for according to C&K's salvage rate above as fully as if such vessel were owned by or in the service of strangers." (Id. Clause 20.)

6.     Attorney Fees.

Clause 25 of the Charter and Freight Agreement provides that "in the event of a dispute arising out of the interpretation or enforcement of any term of this Agreement, which dispute is

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone (206) 838-7555 Fax (206) 838-7515

referred by either party hereto to an attorney for resolution, the prevailing party shall be entitled to collect its full costs, including attorneys' fees, expended in connection therewith, whether or not litigation is actually commenced." (Charter and Freight Agreement at Clause 25.)

**B.** **The Vessels.**

As discussed in detail below, at the time of its sinking, the tugboat ARIES was towing Barge KRS 240-5. The tugboat BLARNEY was subsequently engaged to tow Barge KRS 240-5 to Nome.

1.    The ARIES.

The tug ARIES (O.N. 623521) was a 68-foot tugboat built in 1980. (Jones Decl. ¶ 6 & Ex. 4.) Her registered owner is C&K. (Answer to Third-Party Compl. (Dkt. #47) ¶ 13.) C&K is comprised of two members, Kevin Kennedy and Brian Campbell. (Kennedy Dep. 12:22-13-7.). They each share ownership of C&K equally. (Id. 15:3-10.)

2.    The BLARNEY.

The tug BLARNEY (O.N. 565613) is a 94-foot tugboat built in 1945. (Jones Decl. ¶ 7 & Ex. 5.) Her registered owner is Tug Blarney LLC. (Mem. in Supp. of Mot. for Summ. J. (Dkt. #77) at 2:12-13.) Tug Blarney LLC is comprised of the same two members who comprise C&K, Kevin Kennedy and Brian Campbell. (Id.). Like their ownership of C&K, they share ownership of Tug Blarney LLC equally. (Kennedy Dep. 12:22-13-11.)

On or about May 1, 2009, Tug Blarney LLC and C&K entered into a bareboat charter agreement with a 5-year term. (Answer to Third-Party Compl. (Dkt. #47) ¶ 12.) The bareboat charter agreement was in effect at all times relevant herein. (See id. ¶ 1.) Pursuant to the terms of the charter agreement, C&K is the owner *pro hac vice* of the BLARNEY, and has exclusive custody and control of the vessel. (Id. ¶ 31.) The charter agreement states, in pertinent part:

Charterer assumes responsibility for all loss, damage, liability, liens, encumbrances, claims, expenses and/or suits of any type or nature whatsoever and howsoever caused arising out of or related to the Vessel or its use or operation during our as a result of this Charter. Charterer agrees to indemnify and hold harmless Owner and the vessel from all loss, damage, liability, liens, encumbrances, claims, expenses and/or suits of any type or nature whatsoever

and howsoever caused, including attorney's fee and legal costs, arising out of or related to the Vessel and/or its use or operation during or as a result of this Charter, whether resulting in whole or part from the negligence or other fault of either party or the Vessel.

(Kennedy Dep. at Ex. 8 Clause 11.)

3. The Barge KRS 240-5.

The barge utilized to transport Ridge's cargo was the Barge KRS 240-5 (O.N. 509480). (Kennedy Dep. 73:21-76:1 & Ex. 6 p. 1.) The Barge KRS 240-5 is a 240-foot flat deck barge equipped with a ramp. (Kennedy Dep. at Ex. 6.) At the time of the alleged salvage, C&K had exclusive responsibility, possession, and command of Barge KRS 240-5 pursuant to a bareboat charter agreement with its registered owner, Heko Services, Inc. (Id.) The term of the charter agreement was "approximately 120 days," beginning on or about May 18, 2011, and terminating on or about September 15, 2011. (Id.)

Pursuant to the terms of the charter agreement, C&K was obligated to "at its expense, maintain the [Barge KRS 240-5] in the same good condition, repair, and working order as upon delivery." (Id. at Clause 4.) Additionally, at the conclusion of the charter term, C&K was required to redeliver Barge KRS 240-5 "in the same good condition, repair, and working order as upon delivery." (Id. at Clause 7(B).) The charter party also contained a very broad liability and indemnity provision under which C&K was "solely responsible for all loss, damage, liability . . . whatsoever and however caused arising out of or related to the Barge [KRS 240-5] and/or its use or operation during the charter term . . . ." (Id. Clause 9.) C&K was obligated to indemnify and hold harmless Barge KRS 240-5's owner from "all loss, damage, liability . . . whatsoever and however caused arising out of or related to the [Barge KRS 240-5] and/or its use or operation during the charter term . . . ." (Id.)

C&K obtained insurance coverage for the Barge KRS 240-5. (Jones Decl. ¶ 5 & Ex. 3 (hereinafter "Sue & Labor Compl.") ¶¶ 1.7, 2.3.) That policy of insurance contains a sue and labor clause, which states, in relevant part: "[i]n case of any Loss or Misfortune, it shall be lawful and necessary for the Assured, their Factors, Servants and Assigns to sue, labor and

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT

Case 3:12-cv-00097-SLG Document 89 Filed 11/06/13 Page 9 of 38

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

travel for, in, and about the defense, safeguard and recovery of the Vessels, or any part thereof . . . ." (Jones Decl. ¶ 8 & Ex. 6 (hereinafter "the Policy") at p. TBA000607.) Named as assured were C&K, Tug Blarney LLC, and any "affiliates, subsidiary, or inter-related companies." (Id.)

## C. The ARIES' Misfortunes.

C&K acquired the ARIES on or about May 16, 2011. (Jones Decl. ¶ 6 & Ex. 4.) Less than six weeks later, the vessel sank to the bottom of the Bering Sea, a total loss. (See Third Am. Compl. (Dkt. #66) ¶¶ 15-16.) In the short time that C&K owned and operated the vessel, just about everything that could go wrong did.

Immediately after C&K acquired the vessel, it was discovered that her starboard rudder shoe and pintle were missing and in need of replacement. (Jones Decl. ¶ 12 & Ex. 11 (hereinafter "Hicks Dep.") at 24:6-17.) Despite discovering this significant problem with the ARIES' steering gear, C&K did not arrange for the vessel to be drydocked for inspection or repair. (Id. 65:2-24) Instead, C&K arranged for a diver to perform the needed repairs while the ARIES remained afloat, presumably so the vessel could be deployed as soon as possible to perform C&K's transportation contracts with Ridge Contracting and others. (Id.)

Within days of departing Seattle for Alaska, the ARIES was forced to deviate from her towing assignment to put in at Seward for repairs to her reduction gear. (Kennedy Dep. 40:18-41:10.) At the same time, seals on several watertight doors needed replacement. (Id.) While these repairs were being performed, there was a fatality aboard the ARIES due to an unseaworthy condition. (Kennedy Dep. 45:17-48:15 & Ex. 2-3.)

After the repairs were complete and most of the crew had been changed out, the ARIES departed Seward, later arriving in Dutch Harbor. (Kennedy Dep. 55:7-18.) While in Dutch Harbor, one of ARIES' deckhands was injured when the ARIES' tow wire came loose from the chaffing block while the vessel was making tow. (Jones Decl. ¶ 13 & Ex. 12 (hereinafter "Pine Dep.") at 41:23-42:15.)

Shortly after departing Dutch Harbor with Barge KRS 240-5 in tow, the ARIES sank.

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 10

Case 3:12-cv-00097-SLG   Document 83   Filed 11/06/13   Page 10 of 38

(Third Am. Compl. (Dkt. #66) ¶¶ 14-16.) At the time of the sinking, the seas were eight to ten feet, and the winds were twenty-five knots out of the southeast. (Pine Dep. at 44:7-45:8.) These weather conditions were within ARIES' operational capabilities:

> Q.    Did you believe that she was capable of being safely operated in those conditions?
>
> A.    Yes.
>
> Q.    You didn't think the weather conditions were more than the ARIES could handle?
>
> A.    No.

(Pine Dep. 47:19-24.) Prior to the sinking, ARIES was operating normally, and the voyage was routine and uneventful:

> Q.    Was the ARIES handling normally during this portion of the voyage?
>
> A.    Yes.
>
> Q.    And was the barge towing as expected?
>
> A.    Yes.
>
> Q.    And you previously described that portion of the voyage as uneventful. You didn't notice anything at all unusual or unexpected; is that right?
>
> A.    That's correct.

(Pine Dep. 43:23-45:6.) There was no indication that the ARIES had struck some unknown submerged object or another vessel:

> Q.    Did you see, hear, or feel anything that made you think that the ARIES may have struck something just before taking on this list?
>
> A.    No.

(Pine Dep. 48:6-9.) Finally, while the ARIES crew was in the process of abandoning ship, the ARIES collided with the Barge KRS 240-5, puncturing several holes in the hull of Barge KRS 240-5. (Third Am. Compl. (Dkt. #66) ¶ 19.)  In sum, during C&K's brief ownership of the vessel, the ARIES suffered from: serious mechanical problems, issues with watertight integrity,

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 11

Case 3:12-cv-00097-SLG   Document 83   Filed 11/06/13   Page 11 of 38

a fatal accident, injury to her crew, a collision, and an unexplained sinking in ordinary weather conditions.

**D.      The Alleged Salvage Operation.**

Shortly after the ARIES sank, C&K member Kevin Kennedy directed the BLARNEY to immediately depart Naknek in order to recover the ARIES' crew. (Kennedy Dep. 62:24-63:7.) While the BLARNEY was underway, the ARIES' crew was recovered by the United States Coast Guard. (Third Am. Compl. (Dkt. #66) ¶ 19.) The BLARNEY was directed to continue on to the site of the ARIES sinking in order to recover the Barge KRS 240-5 and complete its intended voyage to Nome. (Kennedy Dep. 98:12-99:9.)

When the BLARNEY arrived on scene, her master elected to delay the recovery operation in order to take advantage of favorable weather conditions that were expected to develop the following day. (Jones Decl. ¶ 9 & Ex. 7 (hereinafter "Hilty Dep.") at 45:1-5.) Once the weather conditions were right, the BLARNEY crew began the recovery operation. (Hilty Dep. 45:13-20.) The BLARNEY began towing an improvised grapple in order to snag the tow wire connecting Barge KRS 240-5 to the sunken ARIES. (Id. 46:21-47:10.) Less than two hours later, the recovery operation was complete and Barge 240-5 was secured. (Id. 50:16-25.) The BLARNEY then towed the KRS 240-5 to Nome. (Id. 64:9-11.) The voyage was uneventful. (Id. 64:9-20.) After arriving at Nome, the BLARNEY was engaged in tending to the KRS 240-5 while temporary repairs were undertaken. (Third Am. Compl. (Dkt. # 66) ¶¶ 32-33.)

Using the BLARNEY, C&K transported the barge to Nome, but C&K did not transport the cargo up the Yukon River to its final destination in Alakanuk as agreed. (Id. ¶¶35-36.) Nor did C&K perform any of the tasks required in Phases II-IV of the Charter and Freight Agreement. (Kennedy Dep. at 94:13-22.) Ridge was forced, at its own expense, to hire other companies to complete the remainder of the transportation functions set out in the contract. (McLaughlin Dep. at 119:23-120:16.)

\\\\

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

**E.    This Lawsuit.**

This lawsuit was filed by Tug Blarney, LLC on May 4, 2012. (<u>See</u> Compl. (Dkt. #1).) Subsequently, C&K and the crewmembers of the Tug BLARNEY joined the lawsuit and brought claims for salvage against Ridge Contracting. (<u>See</u> Second Am Compl. (Dkt. # 34); Answer to Third-Party Complaint and Counterclaim (Dkt. #35).) Thus, the "Salvage Claimants" currently consist of Tug Blarney, LLC, C&K, and the individual crewmembers of the BLARNEY. Later, Ridge Equipment was added as a defendant to the salvage claims. (Third Am. Compl. (Dkt. #66).)

**F.    C&K & Tug Blarney LLC File Lawsuit for "Sue and Labor."**

On August 27, 2013, C&K and Tug Blarney, LLC filed suit against the hull and machinery underwriters of Barge KRS 240-5 in the Superior Court of Washington in and for King County. (<u>See</u> Sue & Labor Compl.) The action was subsequently removed to the United States District Court for the Western District of Washington, where it is currently pending as Case No. 2:13-cv-01697-RSM. (<u>Id.</u> & Jones Decl. ¶ 5.)  In that action, C&K and Tug Blarney LLC argue that the very same "salvage" operation for which they seek to recover in this action was actually undertaken pursuant to their obligations under the hull and machinery insurance policy covering Barge KRS 240-5. (Sue & Labor Compl. ¶¶ 3.1-3.4.) Specifically, C&K and Tug Blarney LLC argue that their efforts to recover Barge KRS 240-5 were undertaken due to the obligations imposed by the hull and machinery insurance policy's sue and labor clause. (<u>Id.</u>) C&K and Tug Blarney LLC contend that because "[t]he purpose of the Sue and Labor clause is to reimburse the insured [i.e., C&K and Tug Blarney LLC] for those expenditures which are made primarily for the benefit of the insurer to reduce or eliminate a covered loss," they are entitled to reimbursement for their efforts to recover Barge KRS 240-5. (<u>Id.</u> ¶ 3.3.) Thus, although C&K and Tug Blarney LLC had previously contended in this action that their efforts to recover the Barge KRS 240-5 and her cargo were voluntary and undertaken primarily for the benefit of Ridge Contracting and Ridge Equipment, C&K and Tug Blarney LLC now admit that

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

those actions were actually undertaken, at least in part, pursuant to the preexisting legal duty created by the hull and machinery insurance policy's sue and labor clause. (See id.)

## IV.     SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact initially lies with the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets this burden, the non-moving party must present specific factual evidence demonstrating the existence of a genuine issue of fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). The non-moving party may not rely on mere allegations or denials. Id. at 248–49. She must demonstrate that enough evidence supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth. Id. (citing First National Bank of Arizona v. Cities Service Co., 391 U.S. 253 (1968)). A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001).

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party, and draw "all justifiable inferences" in the non-

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

moving party's favor. Anderson, 477 U.S. at 255 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party." Id. at 248. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–587 (1986)). If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate. Anderson, 477 U.S. at 249.

## V.     <u>ARGUMENT: CONTRACT CLAIMS</u>

### A.     Governing Principles of Contract Interpretation.

"As a general rule, admiralty law applies to all maritime contracts." Aqua-Marine Constructors, Inc. v. Banks, 110 F.3d 663, 670 (9th Cir. 1997) (citing Insurance Co. v. Dunham, 78 U.S. (11 Wall.) 1, 29 (1870)). "[A] contract is maritime if it relates to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea, or to maritime employment." Id. "A charter party is clearly a maritime contract." Id. at 671. Accordingly, the Charter and Freight Agreement, which provides for the charter of vessels to perform transportation by sea, is a maritime contract, and admiralty law governs the interpretation of that agreement.

"When interpreting a maritime contract, a court should examine the contract as whole, and look first to the intent of the parties as expressed by the terms of the agreement." Bryant v. Am. Seafoods Co., LLC, C07-740RSM, 2007 WL 3273520 (W.D. Wash. Nov. 2, 2007) (citing Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1214 (5th Cir.1986)). "Contract terms are to be given their ordinary meaning, and whenever possible, the plain language of the contract should be considered first." Starrag v. Maersk, Inc., 486 F.3d 607, 616 (9th Cir. 2007) (internal quotation marks omitted). "A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

meaningless or superfluous." Id. (citing Chembulk Trading LLC v. Chemex Ltd., 393 F.3d 550, 555 (5th Cir. 2004)). Only if the language is ambiguous should a court examine extrinsic evidence and look beyond the written language of the contract. See Fontenot, 791 F.2d at 1214.

**B.     C&K Breached the Charter and Freight Agreement Because it Failed to Indemnify, Protect, Defend, and Hold Ridge Contracting Harmless from the Salvage Claims Asserted in This Action.**

Pursuant to the plain language of the Charter and Freight Agreement, Ridge Contracting is entitled to be indemnified, protected, defended and held harmless by C&K for all claims, costs, expenses and liabilities arising out of or connected to the loss of the ARIES and/or damage to Barge KRS 240-5, including but not limited to claims, costs, expenses and liabilities incurred as the result of Plaintiffs' claims against Ridge Contracting in the instant action.

1.     The Indemnity Provision.

The Charter and Freight Agreement contains a liability and indemnity provision, which provides as follows:

> **10.     Liabilities and Indemnities.**
>
> **10.1.  C&K.** Notwithstanding anything else contained in this Agreement, Ridge shall not be responsible for loss of or damage to the property (including owned, leased and rented property) of C&K or of their contractors and sub-contractors, including any Tug, or for personal injury or death of any employee of C&K or of their contractors and sub-contractors, arising out of or in any way connected with the performance of this Agreement, even if such loss, damage, injury or death is caused wholly or partially by the act, neglect, or default of Ridge, their employees, contractors, or sub-contractors, and even if such loss, damage[,] injury or death is caused wholly or partially by unseaworthiness of any vessel and C&K shall indemnify, protect, defend, and hold harmless Ridge from any and against all claims, costs, expenses, actions, proceedings, suits, demands and liabilities whatsoever arising out of or in connection with such loss, damage, personal injury or death.

(Charter and Freight Agreement Clause 10.1). This clause is unambiguous. The first part of the clause limits Ridge Contracting's liability for damage or loss to C&K's property: "Ridge [Contracting] shall not be responsible for loss of or damage to the property (including owned, leased, and rented property) of C&K . . . ." (Id.) The second part of the clause sets forth C&K's obligation to indemnify Ridge Contracting: "C&K shall indemnify, protect, defend and hold

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT 16

Case 3:12-cv-00097-SLG   Document 83   Filed 11/06/13   Page 16 of 38

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555  Fax: (206) 838-7515

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

harmless Ridge [Contracting] from any and against all claims, costs, expenses, actions, proceedings, suits, demands and liabilities arising out of or in connection with such loss, damage . . . ." (Id.)

The indemnity provision is far broader than the liability provision. It extends not only to claims for loss or damage to C&K's property, but also to any liability "arising out of or in connection with" the loss or damage of C&K's property. (Id.)

2.     The Indemnity Provision's "Arising Out Of or In Connection With" Language Must be Broadly Construed.

As a general rule, under federal maritime law, indemnity provisions must be broadly construed. In re Fitzgerald Marine & Repair, Inc., 619 F.3d 851, 860 (8th Cir. 2010) ("Pursuant to federal maritime law, we are to construe the indemnity provision broadly."). And, in particular, "absent more precise language in maritime contracts [courts] construe broadly 'in connection with' and similar terms in indemnification agreements." Fontenot v. Mesa Petroleum Co., 791 F.2d 1207, 1215 (5th Cir. 1986). The Ninth Circuit has adopted the following construction of "arising out of":

> 'Arising out of' are words of much broader significance than 'caused by'. They are ordinarily understood to mean 'originating from' 'having its origin in,' 'growing out of' or 'flowing from" or in short, 'incident to, or having connection with.'

Underwriters at Lloyd's of London v. Cordova Airlines, Inc., 283 F.2d 659, 664 (9th Cir. 1960) (quoting Red Ball Motor Freight v. Employers Mutual Liability Insurance Co., 189 F.2d 374, 378 (5th Cir. 1951)). The Alaska Supreme Court has adopted an identical definition: "The words 'arising out of' are very broad, general and comprehensive terms, ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.'" Stephan & Sons, Inc. v. Municipality of Anchorage, 629 P.2d 71, 77 n.16 (Alaska 1981) (quoting Baca v. New Mexico State Highway Dept., 82 N.M. 689, 486 P.2d 625, 628 (App. 1971)). The phrase "in connection with" is given the same broad construction. See United Airlines, Inc. v. State Farm

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 17

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

Fire & Cas. Co., 51 P.3d 928, 932 (Alaska 2002).[1]

United Airlines provides an example of the broad obligation to indemnify created by this sort of language. In that case, the State of Alaska leased land near the Anchorage International Airport to the Krogstad family. Id. at 930. The Krogstads then subleased the property to United Airlines. Id. Pursuant to the sublease agreement, United Airlines was required to indemnify the Krogstads "from all suits, actions, damages, liability, and expenses in connection with . . . personal injury . . . arising from or out of any occurrence at the Premises, or from the use by [United Airlines] . . . of the Premises." Id. at 932 (alterations in original) (emphasis omitted). A motorcyclist was injured following a collision with a United Airlines baggage cart travelling between the leased property and the airport. Id. at 930. The motorcyclist subsequently brought suit against the State of Alaska. Id. The State of Alaska then sought indemnity from the Krogstads, and the Krogstads in turn sought indemnity from United Airlines. Id.

United Airlines argued that the Krogstads' potential liability did not "arise from or out of" any occurrence at or United Airline's use of the premises. Id. at 932. The Alaska Supreme Court disagreed and held that the Krogstads' potential liability "clearly arose from [United Airlines] operation of the baggage cart in connection with [Untied Airline's] use of the premises subleased to [United Airlines] by the Krogstads." Id. In other words, the Krogstads' potential liability to the State of Alaska for the motorcyclist's claim "arose from" United Airlines' use of

---

[1] "[S]ince the body of federal maritime statutes and judicially created general maritime law is not a complete system, judges in admiralty cases frequently adopt state law rules through a process of 'borrowing,' thereby incorporating them into the general maritime law." 1 Thomas J. Schoenbaum, Admiralty & Mar. Law § 4-2 p. 227 (5th ed. 2011). Although United Airlines is not a maritime case, it is consistent with established general maritime principles relating to construction and interpretation of indemnity agreements using "arising out of" and "in connection with" language. Cf. Fontenot, 791 F.2d at 1215. Accordingly, this Court may "borrow" from United Airlines to the extent the case provides relevant persuasive authority. Fontenot, the leading case on interpretation of this language, involves a very complex indemnity agreement implicating multiple parties performing oil field work in the Gulf of Mexico. While the effect of the language in both United Airlines and Fontenot is the same, the facts of United Airlines are simple and straightforward, and therefore make for a better illustrative example. For a brief summary and analysis of Fontenot, see In re Fitzgerald Marine & Repair, Inc., 619 F.3d 851, 860-61 (8th Cir. 2010).

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 18

Case 3:12-cv-00097-SLG   Document 83   Filed 11/06/13   Page 18 of 38

the leased property simply because the baggage cart departed from the leased property. <u>See</u> <u>id.</u> Even though the collision did not occur on the leased property and the alleged injuries had nothing whatsoever to do with the property itself, United Airlines was still required to indemnify the Krogstads. <u>See</u> <u>id.</u> <u>United Airlines</u> illustrates the broad interpretation of the "arising out of" language that is contained in many contractual indemnity provisions.

3.    <u>The Salvage Claim Falls Within the Scope of the Indemnity Provision.</u>

In order for Ridge Contracting to be entitled to be indemnified, protected, defended and held harmless by C&K, the following elements must be present:

- There must be loss of or damage to the property (including owned, leased and rented property) of C&K;

- The loss or damage must arise out of or be connected with the performance of the Charter and Freight Agreement; and

- There must be a claim, cost, expense, action, proceeding, suit, demand or liability arising out or connected with that loss or damage.

Here, there is no question that the ARIES and the Barge KRS 240-5 were the owned, leased, or rented property of C&K. Both had been demise chartered to C&K. (Kennedy Dep. at 73:21-76:1). Likewise, there is no question that the ARIES was lost and the Barge KRS 240-5 was damaged in connection with the performance of the Charter and Freight Agreement. (Mem. in Supp. of Mot. for Summ. J. (Dkt. #77) 2:3-11.) These vessels were in the process of completing Phase One of the agreement when the ARIES sank (i.e., was lost) and the Barge KRS 240-5 was damaged. (<u>Id.</u>)

The only question, then, is whether the salvage claims asserted in this action "arise out of" or are "connected with" the sinking of the ARIES and/or the damage to the Barge KRS 240-5. As noted above, the phrase "arising out of" is "ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.'" <u>Underwriters at Lloyd's of London</u>, 283 F.2d at 664.

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 19

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

Here, there is no genuine dispute about the origins of the alleged salvage claim. The Salvage Claimants contend that they are entitled to a salvage award because the property allegedly salved was subject to a marine peril. (Third Am. Compl. (Dkt. #66) at ¶ 42.) Specifically, the Salvage Claimants allege that they are entitled to salvage because the property allegedly salved "was effectively anchored [to the sunken ARIES] and at the mercy of the Bering Sea," and "[w]ithout some immediate action, it was likely that the Barge and Cargo would be lost." (Id. ¶ 19.) The actions Salvage Claimants allege taking in their efforts to salve the property include disconnecting Barge KRS 240-5 from the sunken ARIES, towing the Barge KRS 240-5 to Nome, tending to the Barge KRS 240-5 while the holes in her hull were repaired, and monitoring the sunken ARIES for the discharge of marine pollution. (Id. ¶¶ 23-34, 38-39.)

To the extent that the property allegedly salved was subject to a marine peril, it was the direct and proximate result of the sinking of the ARIES and the damage to the Barge KRS 240-5. This alleged marine peril is an essential element of the salvage claims asserted against Ridge Contracting and Ridge Equipment. To the extent that Ridge Contracting and Ridge Equipment's property was successfully "salved," that salvage operation involved cutting the tow wire of the sunken ARIES as well as towing the damaged Barge KRS 240-5 and repairing holes in her hull. (Id. ¶¶ 23-36.) Moreover, a considerable portion of the time and expense of the alleged salvage operation is attributable to the Salvage Claimants' efforts to monitor the sunken ARIES in order to determine if pollutants had been discharged. (Id. ¶¶ 37-39.) C&K cannot seriously argue that the salvage claim does not flow from or have its origins in the sinking of the ARIES and the damage to the Barge KRS 240-5. But for this loss and damage to C&K's property, the salvage claim would have never arisen. There is no question that the salvage claim is connected to the loss of the ARIES and the damage to Barge KRS 240-5. Indeed, the claim is predicated on the fact that the cargo remained physically connected to the sunken ARIES, afloat aboard the damaged Barge KRS 240-5. The salvage claim arises from or is connected to the loss of the

ARIES and the damage to Barge KRS 240-5, and for that reason, C&K is obligated to indemnify, protect, defend and hold harmless Ridge Contracting from the salvage claims. Accordingly, this Court should find that C&K materially breached Clause 10.1 of the Charter and Freight Agreement because it failed to indemnify, protect, defend and hold harmless Ridge from the salvage claims asserted in this action. Additionally, Ridge Contracting should be awarded as damages the full costs and attorneys' fees expended in connection with the enforcement of the Charter and Freight Agreement as provided in Clause 25 of that Agreement.

**C.**     **C&K Breached the Charter and Freight Agreement Because it Asserted a Pure Salvage Claim Against Ridge Contracting.**

In addition to the indemnity provision discussed above, the Charter and Freight Agreement provided that "[s]alvage services or assistance rendered to the venture by another vessel owned by or in the service of C&K shall be paid for according to C&K's salvage rate above as fully as if such vessel were owned by or in the service of strangers." (Charter and Freight Agreement at Clause 20.) As discussed in Ridge Contracting's Response in Opposition to C&K's Motion for Summary Judgment, the salvage provision in Clause 20 works in unison with the indemnity provision contained in Clause 10.1 by allowing for C&K to recover payment for salvage services at an agreed-upon rate in certain situations where there is an absence of damage to or loss of C&K's property. (Response in Opposition (Dkt. #80) 13:9-14:10.) In this case, as explained above, because the ARIES was lost and Barge KRS 240-5 was damaged, the indemnity provision in Clause 10.1 applies, relieving Ridge Contracting of the obligation to pay for salvage services pursuant to Clause 20. Even assuming, however, that the indemnity provision was not applicable to the claims asserted in this action, pursuant to the plain language of the Charter and Freight Agreement, C&K is precluded from seeking recovery of a "pure" salvage award from Ridge Contracting. That is because C&K contracted away its right to bring a pure salvage award in favor of an agreement to provide salvage services at a bargained-for rate. (Charter and Freight Agreement at Clause 20.)

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

C&K may argue that the contract's salvage provision should be disregarded because the provision refers to a "salvage rate above" but the Charter and Freight Agreement does not appear to contain a rate specifically identified as the "salvage rate." (<u>See generally</u> Charter and Freight Agreement). Such an argument is unavailing. Rather, in a salvage situation, a "binding contract can be made orally and an exact dollar amount is not necessary to form a binding agreement." <u>Bay & Delta Tractor Tug Co. v. The Barge Pacific Trader</u>, No. C-95-0107-CAL, 1998 AMC 494, 496 (N.D. Cal. 1997) (citing <u>Clifford v. MVI Islander</u>, 751 F.2d 1 (1st Cir. 1984); <u>Flagship Marine Services Inc. v. Belcher Towing Company</u>, 966 F.2d 602, 606 (11th Cir. 1992) <u>opinion reinstated</u>, 23 F.3d 341 (11th Cir. 1994)). As an additional consideration, this Court need not determine the applicable salvage rate, because C&K is not seeking to enforce Clause 20 in this action.

C&K and Ridge Contracting agreed that salvage services rendered to the venture, whether successful or not, would be paid for pursuant to a pre-established rate. (Charter and Freight Agreement, Clause 20.) This agreement benefitted both parties. C&K would be able to recover expenses related to a salvage operation whether or not it was successful, and Ridge Contracting would avoid the uncertainty, risk, and expense associated with a "pure" salvage claim.

C&K now seeks to escape that agreement so it can recover more than the parties bargained for. C&K seeks to join the other Salvage Claimants in pursuit of "a liberal salvage award not less than $1,452,002.00, with the amount and/or composition of such award as may be determined by this Court pursuant to the law of salvage." (Third Am. Compl. (Dkt. #66) 9:15-17.) This is not consistent with the parties' intent as evidenced by the plain language of the Charter and Freight Agreement. (<u>See</u> Charter and Freight Agreement at Clause 20.) The parties contracted out of the limitations and liabilities of a pure salvage claim. (<u>Id.</u>) Accordingly, this Court should find that C&K materially breached Clause 20 of the Charter & Freight Agreement by bringing a pure salvage claim against Ridge Contracting. For that reason, C&K's claim for

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

salvage against Ridge Contracting should be dismissed with prejudice. Additionally, Ridge Contracting should be awarded as damages the full costs and attorneys' fees expended in connection with the enforcement of the Charter and Freight Agreement as provided in Clause 25 of that Agreement.

### D. C&K Breached the Charter and Freight Agreement Because it Did Not Perform the Transportation Functions as Agreed.

As explained above, The Charter and Freight Agreement provides that C&K will perform four different transportation functions, set out in phases. In Phase I, C&K was to transport cargo from Seattle and Anchorage to Alakanuk. (Charter and Freight Agreement at Clause 2.) In Phases II and III, C&K was to transport gravel and rock from Nome and St. Mary's to various worksites in Alakanuk, as well as transport certain equipment from Alakanuk back to Nome. (Id. at Clauses 3-4.) In Phase IV, C&K was to transport additional supplies from Seattle to Alakanuk. (Id. at Clause 5.) Ridge Contracting was required to pay C&K a mobilization fee of $122,000 for the performance of Phase I, and an advance deposit of $100,000 for the performance of Phases II and III. (Id.at Clauses 6.4, 6.5.).

Ridge Contracting performed its end of the bargain, paying both the mobilization fee and advance deposit. (McLaughlin Dep. 122:8-19.) C&K, however, failed to perform its obligations under the Charter and Freight Agreement:

Q. Did C&K complete phase I?

A. Yes.

Q. Okay. C&K didn't complete any other phases; correct?

A. No.

Q. That's not correct?

A. No, they didn't complete any other phases.

(Kennedy Dep. 94:17-22.)

There is no question that C&K failed to perform Phases II-IV. With respect to Phase I,

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 23

Case 3:12-cv-00097-SLG   Document 83   Filed 11/06/13   Page 23 of 38

although Kennedy testified that C&K completed Phase I, this statement is inaccurate. It is true that the cargo eventually made it to Alakanuk, but that was only after Ridge Contracting paid others to finish the job C&K started. (McLaughlin Dep. 119:22-121:9.) Kennedy may be referring to the fact that C&K promised to reimburse Ridge Contracting for paying for the other tugs required to complete the voyage to Alakanuk:

**Drew McLaughlin**

| | |
|---|---|
| From: | tunaking2000@aol.com |
| Sent: | Friday, July 15, 2011 6:03 PM |
| To: | Drew McLaughlin; jyoung@ydnlaw.com; mscheer@ydnlaw.com |
| Cc: | brian@campbellmaritime.com |
| Subject: | towage agreement |

Drew,
C&K promises to pay for the standard towage agreement signed 7/15/2011 to get your freight from Nome to Alakanuk.
Due to time restraints this will act as an agreement to you and a legal document can be drafted next week.
Expected cost to be 90,000 usd.
Kevin Kennedy
907-351-3850

(McLaughlin Dep. at Ex. 14 p. TBA001373.) C&K, however, failed to live up to this promise. (McLaughlin Dep. 119:22-121:14.)

In sum, pursuant to the Charter and Freight Agreement, C&K was obligated to perform certain transportation functions. Kennedy readily admits that C&K failed to perform Phases II-IV. (Kennedy Dep. 94:17-22.) Although the transportation functions set out in Phase I were eventually completed, C&K did not perform the transportation from Nome to Alakanuk as agreed. Moreover, C&K retained the advance deposit paid by Ridge Contracting, and failed to reimburse Ridge Contracting for the additional expenses associated with completing this phase of the Charter and Freight Agreement. For these reasons, this Court should find that C&K materially breached Clauses 1-6 of the Charter and Freight Agreement because it failed to perform Phases I-IV as agreed.

Ridge Contracting should be awarded the following damages for C&K's breach of contract:

- The $100,000 advance that Ridge Contracting paid to C&K as a deposit for

performance of Phases II and III. There is no question that C&K performed no portion of Phases II and III.

- The direct[2] costs and expenses incurred by Ridge Contracting in order to complete the portion of Phase I that C&K failed to complete, in an amount to be determined at trial.

- Ridge Contracting's costs and attorneys' fees, in an amount to be determined at trial, as allowed under Clause 25 of the Charter and Freight Agreement.

**E.    C&K Breached the Charter and Freight Agreement Because is Failed to Obtain and Maintain Appropriate Insurance.**

Pursuant to the terms of the Charter and Freight Agreement, C&K was required to obtain and maintain insurance providing coverage for its obligation to indemnify Ridge Contracting. (Charter and Freight Agreement Clause 18 & Ex. D at ¶ 3.) Exhibit D to the Charter and Freight agreement provides that if C&K's protection and indemnity ("P&I") policy does not provide coverage for contractual liability, C&K must obtain comprehensive general liability insurance coverage. (Charter and Freight Agreement at Ex. D ¶ 3.). That Exhibit also requires that C&K name Ridge Contracting as an additional insured and obtain a waiver of subrogation in favor of Ridge Contracting. (Id. at Ex. D ¶ 4).

In the course of discovery, Ridge Contracting propounded interrogatories requesting that C&K identify each and every insurance agreement that might provide coverage for Ridge Contracting's claims for indemnity from C&K. (Jones Decl. ¶ 10 & Ex. 8.) In response, C&K stated that the only insurance policy it had obtained and maintained that might provide coverage was C&K's P&I policy. (Id. at Ex. 8. p.4) That P&I policy, however, did not provide coverage for C&K's contractual liability. (Id. at Ex. 8 p. TBA001536.)  For these reasons, this Court should find that C&K materially breached Clause 18 of the Charter and Freight

---

[2] The Charter and Freight agreement precludes the recovery of consequential damages. (Charter and Freight Agreement at Clause 10.3.). Ridge Contracting seeks only direct damages in the form of the increased costs and expenses in completing Phase I.

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT 25

Case 3:12-cv-00097-SLG   Document 83   Filed 11/06/13   Page 25 of 38

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

1  Agreement because it failed to obtain and maintain the insurance coverage required by Exhibit

2  D to the Agreement.

3      Ridge Contracting is entitled to damages associated with C&K's breach of the insurance

4  provision. Such damages should include the following:

5  • Dismissal of C&K's claims against Ridge Contracting. Dismissal is proper because, in

6      the event that any claim brought by C&K was successful, Ridge Contracting would be

7      damaged to the same extent and, due to the breach, C&K would be required to

8      reimburse Ridge Contracting in the same amount. It would be a waste of this Court's

9      resources to allow the claim to proceed only to have any judgment on the salvage claim

10     immediately reimbursed to Ridge Contracting due to C&K's breach of the insurance

11     requirement.

12  • Additional damages, in the form of any successful salvage claim by any remaining

13     Salvage Claimant, as determined at trial.

14  • Ridge's full costs and attorneys' fees, as determined at trial, pursuant to Clause 25 of the

15     Charter and Freight Agreement.

16              **VI.    ARGUMENT: SALVAGE CLAIMS**

17      Ridge Contracting and Ridge Equipment move for summary judgment dismissing the

18  salvage claims asserted against them for the reasons set forth below.

19  **A.    Salvage Law Fundamentals.**

20      "Salvage is the compensation allowed to persons by whose assistance a ship or her

21  cargo has been saved, in whole or in part, from impending peril on the sea." The Blackwall, 77

22  U.S. (10 Wall.) 1, 12 (1869).

23  1.    Pure Salvage Distinguished From Contract Salvage.

24      There are two types of salvage: contract salvage and pure salvage. "Contract salvage is

25  that type of salvage service entered into between the salvor and the owners of the imperiled

26  property, or by their respective representatives, pursuant to an agreement, written or oral, fixing

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 26

the amount of compensation to be paid whether successful or unsuccessful in the enterprise." 3A Martin J. Norris, <u>Benedict on Admiralty</u> § 159 (2002). In contrast, pure salvage is "[a] voluntary service rendered to imperiled property on navigable waters where compensation is dependent upon success, without prior agreement or arrangement having been made regarding the salvor's compensation." <u>Id.</u> (internal quotation marks omitted). Accordingly, "a contract to pay a given sum for the services to be rendered, or a binding engagement to pay at all events, whether successful or unsuccessful in the enterprise, will operate as a bar to a meritorious claim for [pure] salvage." <u>The Camanche</u>, 75 U.S. (8 Wall.) 448, 477, 19 L.Ed. 397 (1869).

2.      <u>Elements of a Pure Salvage Claim.</u>

A valid claim for pure salvage requires the following elements: "1. A marine peril. 2. Service voluntarily rendered when not required as an existing duty or from a special contract. 3. Success in whole or in part, or that the service rendered contributed to such success." <u>The Sabine</u>, 101 U.S. 384, 384 (1879). This motion focuses on the second element, voluntary service, which is discussed at length below.[3]

3.      <u>The Party that Caused the Marine Peril is Not Entitled to a Salvage Award.</u>

There is one notable limitation to a pure salvage claim: "persons who have contributed to place property in danger cannot be allowed to claim reward for rescuing it from the consequences of their own wrongful acts." <u>The Clarita</u>, 90 U.S. 1, 18-19 (1874) (footnote and internal quotation marks omitted). Accordingly, "salvors are not entitled to reward for saving property which they had by their own wrongful acts contributed to place in jeopardy." <u>Id.</u> at 18.

**B.      C&K Is Not Entitled to A "Pure" Salvage Award, Because C&K Entered Into a Contract With Ridge That Fixed the Price for Salvage Services.**

As noted above, "a contract to pay a given sum for the services to be rendered, or a

---

[3] Ridge Contracting and Ridge Equipment also dispute whether the first element, a marine peril, existed at the time of the alleged salvage. Nonetheless, Ridge Contracting and Ridge Equipment believe that there are fact issues associated with that element and, therefore, it is not subject to dismissal on summary judgment.

CASE NO. 3:12-CV-00097-SLG
<u>TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.</u>
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 27

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

binding engagement to pay at all events, whether successful or unsuccessful in the enterprise, will operate as a bar to a meritorious claim for salvage." The Camanche, 75 U.S. (8 Wall.) 448, 477 (1869); accord Bartholomew v. Crowley Marine Servs., Inc., 337 F.3d 1083, 1087 (9th Cir. 2003) ("A salvage award would have been barred if the agreement had specified a wage rate that applies whether the salvage operation succeeds or fails."). Here, there is such an agreement, and for that reason, C&K is barred from asserting a pure salvage claim.

The Charter and Freight Agreement provided that "[s]alvage services or assistance rendered to the venture by another vessel owned by or in the service of C&K shall be paid for according to C&K's salvage rate above as fully as if such vessel were owned by or in the service of strangers." (Charter and Freight Agreement at Clause 20.) This is not a "no cure, no pay" agreement in which payment is contingent upon success. See Evanow v. M/V Neptune, 163 F.3d 1108, 1112 (9th Cir. 1998). Rather, if salvage services are rendered by a vessel owned by or in the service of C&K, C&K "shall be paid," without regard to whether it is successful or unsuccessful in the enterprise. (Charter and Freight Agreement at Clause 20.)

Although the Charter and Freight Agreement does not appear to contain a rate specifically identified as the "salvage rate," the fact that the rate is unspecified does not preclude this Court from finding that the parties had reached a binding agreement regarding payment for salvage services. See, e.g., Bay & Delta Tractor Tug Co. v. The Barge Pacific Trader, No. C-95-0107-CAL, 1998 AMC 494, 496 (N.D. Cal. 1997) ("A binding contract can be made orally and an exact dollar amount is not necessary to form a binding agreement [for salvage services].") (citing Clifford v. MVI Islander, 751 F.2d 1 (1st Cir. 1984); Flagship Marine Services Inc. v. Belcher Towing Company, 966 F.2d 602, 606 (11th Cir. 1992) opinion reinstated, 23 F.3d 341 (11th Cir. 1994)). Moreover, this Court need not determine the applicable salvage rate at this time, because C&K has not sought to enforce this provision by asserting a claim for contract salvage. Instead, C&K has breached the Charter and Freight Agreement and asserted a claim for pure salvage.

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

Because C&K entered into a binding agreement to receive a given sum for salvage services to be rendered, whether successful or not, C&K's claim for pure salvage is barred as a matter of law. See The Camanche, 75 U.S at 477; Bartholomew, 337 F.3d at 1083. For this reason, C&K's claim for pure salvage should be dismissed with prejudice.

**C.**     **Ridge Equipment is Not Liable for Salvage, Because it Does Not Have a Direct Pecuniary Interest in the Property Allegedly Salved.**

In an apparent effort to avoid the problems raised by the contractual obligations owed Ridge Contracting, Salvage Claimants joined Ridge Equipment to this action. Ridge Equipment is a holding company which has an ownership interest in some of the property allegedly salved. Ridge Equipment leased this property to Ridge Contracting, the operating company which bore the risk of loss for that property.

"It is a well-established rule of American salvage law that anyone who may be liable for the loss of or damage to property is liable for an award for its salvage." San Francisco Bar Pilots v. Vessel Peacock, 733 F.2d 680, 682 (9th Cir. 1984). "Therefore, liability for a salvage award properly extends against one who has a direct pecuniary interest in the property which is the subject of the award." Id. The obvious corollary to this rule is that a party who is not liable for loss of or damage to salved property—and therefore has no pecuniary interest in the salved property—cannot be found liable for a salvage award.

"Courts have not specifically defined what constitutes a direct pecuniary interest [in the context of a salvage claim]." Marc E. Montgomery, Navigating the Back Channels of Salvage Law: Procedural Options for the Small Boat Salvor, 83 Tul. L. Rev. 1463, 1475-76 (2009). The case law demonstrates, however, that ownership of or title to salved property is not a determinative factor. For example, lessee may be liable for salvage. See, e.g., San Francisco Bar Pilots, 733 F.2d at 682. The same holds true for a bailee. See, e.g., Sullivan v. Gen. Helicopters, Int'l, 564 F. Supp. 2d 496, 503 (D. Md. 2008). Even a mortgagee can be liable for salvage. See, e.g., Frankel v. Dravo Corp., 479 F. Supp. 55, 56 (D.D.C. 1979).

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

1    In each of those situations, the party who is liable for salvage would have suffered some

2    damage if the property had not been salved. The salvor's actions prevented or minimized this

3    damage, thereby conferring the benefit necessary for a salvage award. If, however, the loss of

4    the property would not have damaged that party, then the salvor's actions confer no benefit on

5    that party. In that case, the result is clear: "When no benefit is conferred, the salvor is precluded

6    from obtaining a reward." B.V. Bureau Wijsmuller v. United States, 702 F.2d 333, 339 (2d Cir.

7    1983).

8    Ridge Equipment did not bear the risk of loss or damage for any cargo aboard the barge.

9    To begin with, Ridge Equipment did not have any ownership interest at all in the majority of

10   the property allegedly salved. Corporate designees for both Ridge Equipment and Ridge

11   Contracting were deposed on September 17, 2013. (Jones Decl. ¶ 11 & Ex. 9 (hereinafter

12   "Ridge Contracting 30(b)(6) Dep.), Ex. 10 (hereinafter "Ridge Equipment 30(b)(6) Dep.").) In

13   those depositions, corporate designees identified the ownership interests in the property

14   allegedly salved. (Ridge Contracting 30(b)(6) Dep. at 18:9-19:22; Ridge Equipment 30(b)(6)

15   Dep. at 8:4-9:4.)    Only twelve pieces of property were identified as owned by Ridge

16   Equipment. (Ridge Contracting 30(b)(6) Dep. at Ex. 4 p. RCI 001106.) Ridge Equipment does

17   not have any interest in the remaining pieces of property. (Id.) Accordingly, with respect to

18   these remaining pieces of property, this Court should find that Ridge Equipment is not liable for

19   salvage.

20   With respect to the twelve pieces of property identified as owned by Ridge Equipment,

21   Ridge Equipment had leased this property to Ridge Contracting. (Ridge Equipment 30(b)(6)

22   Dep. at 25:20-26:19.) Pursuant to the terms of the lease agreement, the risk of loss was borne

23   by Ridge Contracting:

24       Q:    Okay. And if Ridge Contracting is leasing the equipment from Ridge
               Equipment, under the terms of that lease is it responsible for that
25             equipment, the repair, loss, insurance?

26       A:    Is Ridge Contracting?

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 30

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

Q:      Ridge Contracting.

A:      Yes.

Q:      Okay. And Ridge Contracting carries insurance to cover the Ridge Equipment, LLC equipment?

A:      Yes.

(McLaughlin Dep. 77:5-16). If the barge had sunk, capsized, or run aground, and all of the cargo was destroyed, Ridge Equipment would not have been damaged. That is because Ridge Contracting bore the risk of loss and was responsible for the cargo. Accordingly, the alleged salvage conferred no benefit whatsoever on Ridge Equipment. For these reasons, this Court should find that Ridge Equipment is not liable for salvage, and dismiss the salvage claims against Ridge Equipment with prejudice.

**D.      C&K and Tug Blarney LLC are Not Entitled to Salvage Because The Alleged Salvage Act Was Not Voluntary.**

"Since a salvage act must be voluntary, a person who is under a duty to render assistance cannot claim as a salvor." G. Gilmore & C. Black, The Law of Admiralty 541 (2d ed. 1975). In order for salvage services to be considered voluntary, the Court must find that the service "was not rendered in pursuance of any duty owed to the owner or to the property." The Clarita, 90 U.S. 1, 17 (1874). Stated differently, if a salvage claimant had a "pre-existing contract that connected him with the duty of employing himself for the preservation of the vessel," then there is no right to recover a salvage award. Id. at 16. Accordingly, any pre-existing duty to care for or safeguard salved property will preclude a salvage award. F.D.S. Marine, LLC v. Shaver Transp. Co., 00-1245-ST, 2001 WL 34045718, at *11 (D. Or. May 25, 2001).

Where a party with a pre-existing duty directs a third party to perform salvage services on its behalf, that third party is not entitled to a salvage award. Id. at *15. There are three reasons for this outcome. First, the third party can have no better claim for salvage than the

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 31

party which called it into action. Id. at *12 ("Because FDS Marine performed the repairs to the ways on behalf of Foss, it should have no better salvage claim against Shaver than Foss has against Shaver."). Second, the third party is not acting as a volunteer for the benefit of the owner of the salved property—instead, the third party is acting in furtherance of an obligation to the party with the pre-existing duty. Id. at *14 ("Here, FDS Marine can not [sic] demonstrate that it 'voluntarily' came to the assistance of the DESCHUTES when it was contacted and hired by Foss."). Third, the third party must look to the party who called it into action for compensation. Id. at *15 ("FDS Marine provided services pursuant to an implied contract with Foss to be paid to fix the ways and thus should look to Foss for recompense.").

Here, the relevant salvage act alleged is the recovery and repair of the Barge KRS 240-5 barge. (Third Am. Compl. (Dkt. # 66) ¶ 21-39.)[4] Claimants' recovery and repair of the KRS 240-5 was not voluntary: it was required due to the pre-existing duties set out below.

1.  C&K and Tug Blarney LLC Had a Preexisting Duty Pursuant to the Sue and Labor Clause.

C&K and Tug Blarney LLC admit they were named as assureds under an insurance policy providing hull and machinery coverage for the Barge KRS 240-5. (Sue & Labor Compl. ¶¶ 2.2, 2.3, 2.5.) C&K and Tug Blarney LLC further admit that the insurance policy contained a sue and labor clause. (Id. ¶ 3.2.)[5] C&K and Tug Blarney LLC allege that their efforts to recover

---

[4] Salvage Claimants also allege actions related to monitoring the discharge of marine pollution from the sunken ARIES. (Third Am Compl. ¶¶ 37-39.) To the extent that these actions are relevant to this Motion, as owner and operator of the ARIES, C&K was the "responsible party" for that vessel as defined by the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et seq., and therefore liable for monitoring costs. See, e.g., United States v. Conoco, Inc., 916 F. Supp. 581, 585 (E.D. La. 1996). Moreover, these monitoring efforts were likely required pursuant to any insurnace policy providng marine pollution coverage for the ARIES. Accordingly, these efforts were not voluntary.

[5] The relevant  policy of insurance provides protection and indemnity coverage as well as hull and machinery coverage. The Sue & Labor Compl. quotes the sue and labor provision from the protection and indemnity portion of the policy, rather than the sue and labor provision from the hull and machinery portion of the policy, which is the portion of the policy likely to provide coverage for the substantive allegations in that pleading. There are slight differences in the language of these two provisions, but the obligations created by these provisions are substantially similar.

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

Barge KRS 240-5 fall within the scope of the sue and labor clause, and were undertaken "to protect the Underwriters from additional loss," and "made primarily for the benefit of the insurer." (Id. ¶¶ 2.9, 2.22, 3.3)

Pursuant to the Sue & Labor clause in the insurance policy covering Barge KRS 240-5, C&K and Tug Blarney LLC expressly warranted that they would defend, safeguard, and recover the KRS 240-5. Reliance Ins. Co. v. McGrath, 671 F. Supp. 669, 675 (N.D. Cal. 1987) ("There is an express warranty embodied in the Sue and Labor Clause . . . ."). In carrying out this obligation, they had "the duty toward [their] underwriter to exercise the care of a prudent uninsured owner to protect insured property in order to minimize or prevent the loss from the occurrence for which the underwriter would be liable under the policy." Reliance Ins. Co. v. The Escapade, 280 F.2d 482, 488 (5th Cir. 1960); accord McGrath, 671 F. Supp. at 676 ("The insured is said to be under a duty to the underwriter to exercise the care of a prudent uninsured owner, i.e., an owner who knows he will have out-of-pocket responsibility for the loss.").

Thus, C&K and Tug Blarney LLC had a preexisting duty to minimize or prevent the loss of Barge KRS 240-5. They expressly acknowledged that duty by bringing a related action seeking to recover their sue and labor costs in rescuing Barge KRS 240-5. (See generally Sue and Labor Compl.) Because they had a duty to render assistance to the Barge KRS 240-5, and are currently seeking recovery of their costs and expenses pursuant to that duty in that related action, they are not entitled to a salvage award. A salvage award is only available to those whose efforts are voluntary, and C&K and Tug Blarney LLC were not volunteers. For these reasons, the salvage claims of C&K and Tug Blarney LLC against both Ridge Contracting and Ridge Equipment should be dismissed with prejudice.

2.    C&K Had a Preexisting Duty Pursuant to the KRS 240-5 Charter Party Agreement.

Pursuant to the terms of the charter party agreement between C&K and the owners of Barge KRS 240-5, C&K was obligated to return the vessel in good condition, and bore the risk of loss or damage. (Kennedy Dep. at Ex. 6. cls. 4, 7(B), 9.) C&K therefore had a preexisting

duty to care for Barge KRS 240-5, and for that reason, it is not entitled to a salvage award for recovering and repairing that vessel.

3.    <u>C&K Had a Preexisting Duty Pursuant to the Charter and Freight Agreement.</u>

Pursuant to the terms of the Charter and Freight Agreement, C&K had a duty to safely transport the property allegedly salved. (Charter and Freight Agreement at Clauses 1, 2.) In this action, C&K seeks to recover for what it was already paid for: transporting Ridge Contracting's cargo by barge. C&K had a preexisting duty to care for Ridge's cargo, and for that reason, it is not entitled to salvage.

4.    <u>Tug Blarney LLC's Claims Fail Because It Had a Preexisting Duty & Risked No Property.</u>

Pursuant to the terms of the charter party agreement between Tug Blarney LLC and C&K, Tug Blarney LLC gave up all right to control the movements of the BLARNEY while the agreement was in force. (Answer to Third-Party Compl. (Dkt. #47) ¶¶ 1, 12, 31.) Accordingly, Tug Blarney LLC could take no action whatsoever to salvage Ridge's cargo: it had no right to direct the BLARNEY to participate in the recovery of Barge KRS 240-5.

Moreover, to the extent that Tug Blarney LLC took any action to recover Barge KRS 240-5, it was at the direction of C&K. (<u>Id.</u> ¶ 31.) Tug Blarney LLC can therefore have no greater claim to salvage than C&K. <u>F.D.S. Marine, LLC</u>, 2001 WL 34045718 at *15. Additionally, because Tug Blarney LLC was acting at the request of C&K, Tug Blarney LLC was not acting as a volunteer for the benefit of the owner of the salved property—instead, Tug Blarney LLC was acting in furtherance of an obligation to C&K. <u>Id.</u> at *14. Accordingly, Tug Blarney LLC must look to C&K, the party who called it into action, for compensation. <u>Id.</u> at *15. The BLARNEY charter party agreement addresses this very issue, and requires C&K to share any salvage award it receives with Tug Blarney LLC.[6] (Kennedy Dep. at Ex. 8 cl. 20.)

Additionally, pursuant to the terms of the charter party agreement, C&K bore the risk of

---

[6] This provision, however, does not—and cannot—create any right of salvage against Ridge Contracting or Ridge Equipment, because neither entity is a party to this agreement.

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

loss or damage for the BLARNEY, and was required to indemnify and hold harmless Tug Blarney LLC from all loss, damage, and liability of any type or nature arising out of or related to the BLARNEY and its use and operation. (Kennedy Dep at Ex. 8 Clause 11.) Accordingly, Tug Blarney LLC did not risk any property in connection with the alleged salvage. The risk of loss or damage was borne by C&K alone. A vessel owner is only entitled to a salvage award "if there was a risk that the vessel could be affected during the salvage operation." <u>Bartholomew v. Crowley Marine Servs., Inc.</u>, 337 F.3d 1083, 1088 (9th Cir. 2003). Here, any risk to the BLARNEY had been contracted away. Tug Blarney LLC risked nothing in the alleged salvage operation, and for that reason, it is not entitled to a salvage award.

E.    **C&K is Not Entitled to Salvage Because it Caused or Contributed to the Alleged Marine Peril.**

"[P]ersons who have contributed to place property in danger cannot be allowed to claim reward for rescuing it from the consequences of their own wrongful acts." <u>The Clarita</u>, 90 U.S. 1, 18-19 (1874) (footnote and internal quotation marks omitted). Accordingly, "salvors are not entitled to reward for saving property which they had by their own wrongful acts contributed to place in jeopardy." <u>Id.</u> at 18.

Here, there is no question that, to the extent the property allegedly salved was in peril, it was in peril due to the sinking of the ARIES. (<u>See</u> Third Am. Compl. ¶¶ 16, 19.) The cause of the sinking is unknown, but all witnesses agree that the weather conditions were unremarkable and well within the ARIES' capabilities. <u>See</u> <u>supra</u> Part IV C.

This unexplained sinking gives rise to a presumption of unseaworthiness. <u>See, e.g.</u>, <u>Compagnie Mar. Francaise v. Meyer</u>, 248 F. 881, 883 (9th Cir. 1918) ("It has been held by this court and by other courts that the development of a serious leak, occurring from no mishap or accident within a short period of time from leaving port, is evidence from which it may be presumed that the vessel was not seaworthy at the time of leaving."); <u>accord</u> <u>Trans-Amazonica Iquitos, S. A. v. Georgia S. S. Co.</u>, 335 F. Supp. 935, 939 (S.D. Ga. 1971) ("Unexplained

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 35

Case 3:12-cv-00097-SLG   Document 83   Filed 11/06/13   Page 35 of 38

disaster to a vessel may raise an inference of unseaworthiness where there are no abnormal conditions at sea or known cause of the loss."); Cent. R. Co. of N. J. v. Tug Marie J. Turecamo, 238 F. Supp. 145, 147 (E.D.N.Y. 1965) ("[I]n light of the fact that she began leaking excessively in good weather and under normal conditions, she is presumed unseaworthy.").

The unexplained sinking also gives rise to an inference of negligence pursuant to the doctrine of *res ipsa loquitor*. "There is no doubt that *res ipsa loquitur* is applicable in admiralty." United Fruit Co. v. Marine Terminals Corp., 376 F.2d 1007, 1009 (9th Cir. 1967). "The applicability of *res ipsa* to any fact situation depends upon whether each of three elements can be shown: (1) that the injured party was without fault, (2) that the instrumentality causing the injury was under the exclusive control of the defendant, and (3) the mishap is of a type that ordinarily does not occur in the absence of negligence." United States v. Nassau Marine Corp., 577 F. Supp. 1475, 1481 (E.D. La. 1984) aff'd, 778 F.2d 1111 (5th Cir. 1985). Here, Ridge Equipment and Ridge Contracting cannot possibly be considered at fault for the sinking of the ARIES. The ARIES was under the exclusive control of C&K and a vessel does not ordinarily sink in good weather and normal sea conditions in the absence of negligence. Accordingly, the court may infer that C&K's negligence caused or contributed to the sinking of the ARIES.

Thus, C&K is presumed at fault for the sinking of the ARIES. For this reason, C&K is precluded from recovering a salvage award. The Clarita, 90 U.S. at 18-19. Additionally, as discussed above, to the extent that Tug Blarney LLC took any action to recover the KRS 240-5, it was at the direction of C&K. Tug Blarney LLC can therefore have no greater claim to salvage than C&K. F.D.S. Marine, LLC, 2001 WL 34045718 at *15.

\\\\
\\\\
\\\\
\\\\
\\\\

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT - 36

Case 3:12-cv-00097-SLG Document 83   Filed 11/06/13   Page 36 of 38

# VII.   CONCLUSION

For the foregoing reasons, Ridge Contracting and Ridge Equipment respectfully request that this Court grant their motion for partial summary judgment.

Dated this 6th day of November, 2013.

NICOLL BLACK & FEIG PLLC


By: /s/ Jeremy B. Jones
    Larry E. Altenbrun, WSBA No. 31475
    Jeremy B. Jones, WSBA No. 44138
Attorneys for Defendants Ridge Contracting, Inc. and
Ridge Equipment, LLC

NICOLL BLACK & FEIG PLLC
1325 FOURTH AVENUE, SUITE 1650
SEATTLE, WASHINGTON 98101
Phone: (206) 838-7555 Fax: (206) 838-7515

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT 37

# CERTIFICATE OF SERVICE

I hereby certify that on the date set forth below, I electronically filed the foregoing with the Clerk of the Court using the CM/CF system which will send notification of such filing to the following:

**Attorneys for Plaintiffs/Third Party Defendant**

John G. Young, State Bar No. 8308084
Markos Scheer, State Bar No. 0511116
Young deNormandie, et al.
1191 Second Avenue, Suite 1901
Seattle, WA  98101
206-224-9818 Telephone
206-623-6923 Facsimile
Email:  jyoung@ydnlaw.com
        mscheer@ydnlaw.com

DATED this 6th day of November, 2013

NICOLL BLACK & FEIG, PLLC


/s/ Jeremy B. Jones
Jeremy B. Jones, *pro hac vice,* WSBA No. 44138

CASE NO. 3:12-CV-00097-SLG
TUG BLARNEY LLC, ET AL. V. RIDGE CONTACTING, INC.
RIDGE CONTRACTING, INC, AND RIDGE EQUIPMENT, LLC'S
MOTION FOR PARTIAL SUMMARY JUDGMENT 38

Case 3:12-cv-00097-SLG   Document 83   Filed 11/06/13   Page 38 of 38