## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

TUG BLARNEY, LLC, a Washington limited liability company; DOUGLAS HILTY, an individual; ED LYDA, an individual; ROGER KENOYER, an individual; and NICK HUMLICK, an individual,

    Plaintiffs,

  v.

RIDGE CONTRACTING, INC., an Alaska corporation; and RIDGE EQUIPMENT, LLC, an Alaska limited liability company, *in personam,*

    Defendants.

_____

RIDGE CONTRACTING, INC., an Alaska corporation,

    Third-Party Plaintiff,

  v.

C&K MARINE LLC, an Alaska limited liability company,

    Third-Party Defendant/ Counter-Claimant and Cross Claimant.

IN ADMIRALTY

Case No. 3:12-cv-00097-SLG

## <u>ORDER RE MOTIONS FOR SUMMARY JUDGMENT</u>

  This case arises out of circumstances related to the sinking of the tug ARIES in June 2011. The ARIES was owned by Third-Party Defendant C&K Marine LLC ("C&K") and pulling a barge carrying equipment owned by Ridge Contracting, Inc. and Ridge

Equipment, LLC. (Ridge Contracting and Ridge Equipment are together referred to as the "Ridge Defendants.") After the ARIES sank, the tug BLARNEY and her crew went to its assistance and towed the barge and the Ridge Defendants' cargo to Nome. Plaintiff Tug Blarney, LLC ("Tug Blarney") owns the BLARNEY, but had chartered it to C&K. Brian Campbell and Kevin Kennedy own both Tug Blarney and C&K.

On May 4, 2012, Tug Blarney initiated this action for salvage against Ridge Contracting.[1] On November 30, 2012, the BLARNEY's four crewmembers, Douglas Hilty, Ed Lyda, Roger Kenoyer, and Nick Humlick (the "Crew"), were added as Plaintiffs.[2] On July 29, 2013, Plaintiffs added Ridge Equipment as a Defendant.[3]

Ridge Contracting filed a third-party complaint against C&K seeking indemnification and alleging breach of contract.[4] C&K counterclaimed against Ridge Contracting and Ridge Equipment, requesting that "C&K be allowed to participate with the other Plaintiffs in the salvage award for the successful salvage of" the Ridge Defendants' property.[5]

---

[1] Docket 1 (Compl.).

[2] Docket 34 (Second Am. Compl.).

[3] Docket 66 (Third Am. Compl. (the "TAC")). Ridge Equipment is a holding company that held title to certain of the assets used by Ridge Contracting that were on the barge.

[4] Docket 42 (Ridge Contracting Third-Party Compl.).

[5] Docket 47 at 5 (C&K Answer to Third-Party Compl. and Counterclaim); Docket 68 (C&K Cross-Claim against Ridge Equipment). C&K filed its claim against Ridge Equipment as a crossclaim, but generally "a crossclaim may not be asserted against a party on the opposite side of the action." *Wright & Miller*, 6 F.3d. Prac. & Proc. Civ. § 1431 (3d ed.). C&K does not explain under what Federal Rule of Civil Procedure it intended to file its claim against Ridge Equipment, but the Court may exercise jurisdiction over this counterclaim through Rule 13(b). *See also* Docket 75 (Answer to Crossclaim).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 2 of 38

Tug Blarney and C&K have initiated a separate action against various insurance companies in the United States District Court for the Western District of Washington.[6]

Before this Court are three motions for summary judgment:

- At Docket 76, Third-Party Defendant C&K moves for summary judgment against Ridge Contracting, seeking the dismissal of Ridge Contracting's claims for indemnification and the dismissal of the remaining breach of contract claims.[7]

- At Docket 83, the Ridge Defendants move for partial summary judgment on Ridge Contracting's breach of contract claims against C&K, and on C&K's and Tug Blarney's salvage claims against the Ridge Defendants, as well as the Crew's salvage claim against Ridge Equipment.[8]

- At Docket 96, C&K, Tug Blarney, and the Crew (together, the "Salvage Claimants") move for partial summary judgment on the issue of "pure" salvage.[9]

These motions raise overlapping issues, which can be grouped into three categories: (1) indemnification; (2) salvage; and (3) breach of contract (other than the indemnification clause). Oral argument was not requested on any of the motions and was not necessary to this Court's determination of these motions.

---

[6] *See Tug Blarney LLC et al. v. Nat'l Cas. Co. et al.*, No. 2:13-cv-01697-RSM (W.D. Wash., filed Sept. 19, 2013).

[7] Docket 76 (C&K Mot.); Docket 80 (Ridge Contracting Opp'n to C&K Mot.); Docket 85 (C&K Reply).

[8] Docket 83 (Ridge Mot.); Docket 89 (Salvage Claimants Opp'n to Ridge Mot.); Docket 94 (Ridge Reply).

[9] Docket 96 (Salvage Claimants Mot.); Docket 101 (Ridge Opp'n to Salvage Claimants Mot.); Docket 105 (Salvage Claimants Reply).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 3 of 38

# FACTUAL BACKGROUND

## I. The Charter and Freight Agreement between Ridge Contracting and C&K.

Ridge Contracting was engaged to work on construction projects for the summer of 2011 in Alakanuk, Alaska.[10] In May 2011, C&K and Ridge Contracting entered into a Charter and Freight Agreement (the "Charter Agreement").[11] Ridge Equipment was not a party to the agreement. Under the Charter Agreement, C&K agreed to transport cargo to various locations, including Alakanuk, Alaska, for Ridge Contracting in four phases.[12]

Prior to entering into the Charter Agreement, C&K had executed with Tug Blarney a five-year "bareboat or demise" charter for the tug BLARNEY.[13] But C&K's performance of the Charter Agreement would require a tug that was capable of transiting rivers, which the BLARNEY could not do. Consequently, C&K purchased the tug ARIES, which could transit rivers.[14] Ridge Contracting learned that C&K would

---

[10] Docket 81-1 at 3, 15:11-16:8 (Ex. 1 to Jones Decl.: McLaughlin Dep.).

[11] *See* Docket 78-3 at 4 (Ex. C to Scheer Decl. #1: Charter Agreement). The Charter Agreement states it was effective May 6, 2010, but the parties agree it was actually executed in May 2011.

[12] Docket 78-3 at 4-7 (Charter Agreement, Cls. 1-6).

[13] *See* Docket 84-2 at 37 (Ex. 2 to Jones Decl.: Standard Bareboat Charter between Tug Blarney and C&K). A bareboat charter "places the possession, control and management of the vessel in the lessee." Docket 47 at 4 ¶ 16 (C&K Answer to Third-Party Compl. and Counterclaim); Docket 51 at 2 ¶ 16 (Answer).

[14] Docket 78-1 at 6, 37:17-38:4 (Ex. A to Scheer Decl. #1: Kennedy Dep.).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 4 of 38

purchase the ARIES for this purpose "right about the time [it] was signing [the] contract."[15]

## II. The Voyage and Sinking of the ARIES; the BLARNEY Recovers the Barge.

In May 2011, C&K bareboat chartered the barge KRS 240-5 (the "Barge") from Heko Services, Inc.[16] In June 2011, the ARIES, with a four person crew, set off from Dutch Harbor, Alaska, towards Nome, Alaska, with the Barge in tow.[17] Most of the cargo on the Barge was owned by Ridge Contracting; twelve pieces of cargo were owned by Ridge Equipment, but appear to have been leased to Ridge Contracting.[18]

On June 26, 2011, at a location about 100 miles from the Pribilof Islands, the ARIES began listing.[19] The ARIES crew eventually abandoned ship and boarded the Barge.[20] The ARIES then sank, but it was still attached to the Barge.[21] The ARIES acted as an anchor for the Barge.[22] The ARIES crew did not know at that time, but

---

[15] Docket 85 at 13 (C&K Reply); Docket 86-3 at 23-24, 27:24-28:2 (Ex. C to LaRiviere Decl.: McLaughlin Dep.).

[16] Docket 84-2 at 28 (Ex. 2 to Jones Decl.: Standard Bareboat Charter between Heko Services and C&K).

[17] Docket 66 at 3 ¶ 14 (TAC); Docket 74 at 3 ¶ 14 (Answer).

[18] Docket 84-9 (Ex. 9 to Jones Decl.: Summary Appraisal Report of Machinery and Equipment); Docket 90-19 at 6 (Ridge Contracting Interrogatory Objections, Answers, and Responses) ("Ridge[ Contracting's] ownership interest in the Cargo is in the form of a leasehold interest."); Docket 84-9 at 5, at 25:20-26:1 (Ex. 9 to Jones Decl.: McLaughlin Dep.) (these lease agreements are not in writing).

[19] Docket 66 at 3 ¶ 15 (TAC); Docket 74 at 3 ¶ 15 (Answer) (admitting in relevant part).

[20] Docket 90-20 at 5, 54:12-55:1 (Ex. T to Scheer Decl. #2: Pine Dep.).

[21] *Id.* at 5, 56:20-23.

[22] Docket 66 at 3 ¶ 16 (TAC); Docket 74 at 3 ¶ 16 (Answer) (admitting in relevant part).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 5 of 38

before sinking, the ARIES had pierced and holed the Barge.[23]  A U.S. Coast Guard helicopter transported the ARIES crew from the Barge to land.

As noted above, C&K had also bareboat chartered the BLARNEY.[24]  On June 26, 2011, the BLARNEY was towing a different barge in Bristol Bay.[25]  Mr. Kennedy of C&K called the BLARNEY's Captain that day and told him that "the Aries had sunk and [the Crew of the BLARNEY] needed to go get the barge and to leave immediately."[26] Within a few hours, the BLARNEY departed for the site where the ARIES had sunk.[27] One of its crewmembers, Mr. Kenoyer, testified that the Crew's priority was to "rescue [the] lives" of the ARIES crew, and that although this was not necessarily part of his job, he went because he "would expect somebody to do it for [him]."[28]  At that time, the BLARNEY Crew was unaware that the U.S. Coast Guard had already transported the ARIES crew to land.  Once the Crew knew that the ARIES crew was safe, they still "made the best possible speed because [they] didn't know if [the Barge] was going to break loose [from the ARIES] or not."[29]  On June 28, 2011, the BLARNEY arrived at the site where the ARIES had sunk.  The Crew delayed efforts to recover the towline to the

---

[23]  Docket 66 at 4-5 ¶ 19 (TAC); Docket 74 at 3-4 ¶ 19 (Answer) (admitting in relevant part); *see also* Docket 90-20 at 5, 55:14-25 (Ex. T to Scheer Decl. #2: Pine Dep.).

[24]  Docket 84-2 at 37 (Standard Bareboat Charter between Tug Blarney and C&K).

[25]  Docket 90-16 at 3, 37:4-10 (Ex. P to Scheer Decl. #2: Hilty Dep.).

[26]  *Id.* at 4, 38:25-40:6.

[27]  *Id.*

[28]  Docket 102-7 at 13, 25:11-26:12 (Ex. 10 to Jones Decl.: Kenoyer Dep.).

[29]  Docket 90-16 at 4, 40:7-16.

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 6 of 38

Barge, waiting for favorable weather conditions.[30]  Eventually, the Crew separated the

Barge from the ARIES, and secured the Barge to the BLARNEY.[31]  Captain Hilty

testified that the Crew made a plan to recover the Barge's tow line, had safety meetings,

and then made two to three passes by the Barge to catch the tow line.[32]  Captain Hilty

further testified the operation was dangerous, but not so much as to risk the lives of the

Crew:

> I could have got too close to the barge, going by the front of it, had a swell
> throw me into it.  I could have ended up on top of the wire leaning down to
> the ARIES.  I could have got either one [of the tow wires] in our wheel.
>
> *       *       *
>
> I was worried about hitting the barge, and then somebody could have got
> hurt if something had broken on the deck, the stopper wires.
>
> *       *       *
>
> [I]n this situation, there was more risk [than is normally present when
> handing off tow lines] because we were at sea in a swell, so there's more
> motion, there's more going on.  So it was riskier than making tow or
> breaking tow or handing off a barge in Elliot Bay.[33]

Crewmember Kenoyer stated, "[w]e didn't have to do [the salvage operation].  It was –

any one of us could have called the entire operation off and would have just left."[34]

Between June 29 and July 2, 2011, the BLARNEY towed the Barge to Nome.[35]

Repairs were completed on July 16, and the BLARNEY and her Crew departed Nome

---

[30]  *Id.* at 7, 47:3-48:21.

[31]  *Id.*; Docket 66 at 5-6 ¶ 21-25 (TAC); Docket 74 at 4 ¶ 21-25 (Answer) (admitting in relevant part).

[32]  Docket 90-16 at 46:3-48:11 (Hilty Dep.).

[33]  *Id.* at 7, 51:10-54:13.

[34]  Docket 99-2 at 2, 50:17-22 (Ex. B to Scheer Decl. #3: Kenoyer Dep.).

[35]  Docket 78-1 at 8-9, 98:12-101:7 (Kennedy Dep.); Docket 66 at 6 ¶ 30 (TAC); Docket 74 at 5 ¶ 30 (Answer).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 7 of 38

to deliver the Barge to the mouth of the Yukon River,[36] where another tug was waiting to take the Barge up the river. On or about July 18, the Barge was unloaded to the Ridge Defendants, who acknowledge that the cargo was in essentially the same condition as when it had been loaded onto the Barge.[37]

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1333.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The burden of showing the absence of a genuine dispute of material fact initially lies with the moving party.[38] If the moving party meets this burden, the non-moving party must present specific evidence demonstrating the existence of a genuine issue of fact.[39] The non-moving party may not rely on mere allegations or denials.[40] It must demonstrate that enough evidence

---

[36] Docket 90-16 at 10, 79:6-12 (Hilty Dep.).

[37] *See* Docket 90-19 at 7-8 (Ex. S to Scheer Decl. #2: Plaintiff's First Set of Interrogatories and Ridge Contracting's Objections, Answers, and Responses).

[38] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).

[39] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Oracle Corp.*, 627 F.3d at 387.

[40] *Id.* at 248-49.

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 8 of 38

supports the alleged factual dispute to require a finder of fact to make a determination at trial between the parties' differing versions of the truth.[41]

When considering a motion for summary judgment, a court must accept as true all evidence presented by the non-moving party and draw "all justifiable inferences" in the non-moving party's favor.[42] To reach the level of a genuine dispute, the evidence must be such "that a reasonable jury could return a verdict for the non-moving party."[43] The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[44] If the evidence provided by the non-moving party is "merely colorable" or "not significantly probative," summary judgment is appropriate.[45]

## DISCUSSION

### I.  Indemnification (Motions at Docket 76 and 83).

At Docket 76, C&K moves for summary judgment against Ridge Contracting, seeking dismissal of Ridge Contracting's indemnification claim. At Docket 83, Ridge Contracting moves for summary judgment on the closely related question of whether C&K breached the Charter Agreement by failing to indemnify, protect, defend, and hold harmless Ridge Contracting against the salvage claims in this action.

---

[41] *Id.* (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)).

[42] *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

[43] *Id.* at 248.

[44] *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

[45] *Anderson*, 477 U.S. at 249-50 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967); *Cities Serv.*, 391 U.S. at 290).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 9 of 38

## A. Maritime Contract Interpretation.

"As a general rule, admiralty law applies to all maritime contracts."[46]  "If the subject of the contract relates to the ship and its uses as such, or to commerce or navigation on navigable waters, or to transportation by sea, the contract is maritime."[47] "A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous."[48]  "Contract terms are to be given their ordinary meaning, and whenever possible, the plain language of the contract should be considered first."[49]  Only if the language is ambiguous should a court examine extrinsic evidence and look beyond the written language of the contract.[50]

## B. C&K must indemnify, protect, defend, and hold harmless Ridge Contracting for the  salvage claims.

Ridge Contracting asserts that Clause 10.1 of the Charter Agreement concerning "Liabilities and Indemnities" governs whether C&K must indemnify Ridge Contracting for salvage services.  This clause provides:

> 10.1 _C&K_.  Notwithstanding anything else contained in this Agreement, Ridge [Contracting] shall not be responsible for loss of or damage to the property . . . of C&K . . ., including any Tug, or for personal injury or death of any employee of C&K . . ., arising out of or in any way connected with the performance of this Agreement, . . . even if such loss, damage, injury

---

[46]  _Aqua-Marine Constructors, Inc. v. Banks_, 110 F.3d 663, 670 (9th Cir. 1997) (citing _Ins. Co. v. Dunham_, 78 U.S. (11 Wall.) 1, 29 (1870)).

[47]  _Aqua-Marine_, 110 F.3d at 671 (citing _Ingersoll Milling Mach. Co. v. M/V Bodena_, 829 F.2d 293, 302 (2d Cir. 1987)).

[48]  _Id._  (citing _Chembulk Trading LLC v. Chemex Ltd._, 393 F.3d 550, 555 (5th Cir. 2004)).

[49]  _Starrag v. Maersk, Inc._, 486 F.3d 607, 616 (9th Cir. 2007) (internal quotation marks omitted).

[50]  _See Fontenot v. Mesa Petroleum Co._, 791 F.2d 1207, 1214 (5th Cir.1986).

3:12-cv-00097-SLG, _Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al._
Order re Motions for Summary Judgment
Page 10 of 38

or death is caused wholly or partially by unseaworthiness of any vessel and **C&K shall indemnify, protect, defend and hold harmless Ridge [Contracting] from any and against all claims, costs, expenses[,] actions, proceedings, suits, demands and liabilities whatsoever arising out of or in connection with such loss, damage, personal injury or death.**[51]

Ridge Contracting interprets the indemnification portion of Clause 10.1 to apply when three factors are present: (1) there is loss or damage to the property of C&K; (2) the loss or damage "aris[es] out of or in connection with" performance of the Charter Agreement; and (3) there is a claim, cost, expense, action, proceeding, suit, demand, or liability "arising out of or in connection with" that loss or damage.[52] Ridge Contracting asserts that the phrase "arising out of or in connection with" is to be read broadly.[53] And it maintains that the three elements are satisfied here because the ARIES sank, causing a loss to C&K; this occurred during the performance of the Charter Agreement; and the salvage claims arise out of or in connection with the sinking of the ARIES.

C&K asserts that the parties did not intend for C&K to indemnify Ridge Contracting for a salvage claim.[54] C&K maintains that Clause 20 of the Charter Agreement concerning General Average governs the issue of indemnification for salvage services, rather than Clause 10.1. Clause 20 provides:

20. *General Average*: In the event of accident, damage, or disaster before or after the commencement of the service hereunder resulting from any cause whatsoever, . . . Ridge [Contracting] or the tug and/or barge and/or of the cargo aboard it, if any, shall contribute with C&K in general average

---

[51] Docket 78-3 at 8 (Charter Agreement, Cl. 10.1) (emphasis added).

[52] Docket 80 at 11-124 (Ridge Contracting Opp'n to C&K Mot.); Docket 83 at 19 (Ridge Mot.).

[53] *See* Docket 83 at 19 (Ridge Mot.) (compiling cases).

[54] Docket 77 at 16-17 (C&K Memo. in Support of Mot. for Summary Judgment).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 11 of 38

to the payment of any sacrifices, losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect to the venture. Salvage services or assistance rendered to the venture by another vessel owned by or in the service of C&K shall be paid for according to C&K's salvage rate above as fully as if such vessel were owned by or in the service of strangers.[55]

C&K asserts that through Clause 20, despite Clause 10.1, "C&K and Ridge Contracting expressly agreed that Ridge Contracting would be responsible for paying any salvage award, even if the salvage was performed by another C&K-owned vessel."[56] C&K further asserts that reading Clause 10.1 in the way proposed by Ridge Contracting would render meaningless Clause 20.[57]

The Court agrees with Ridge Contracting's interpretation of Clause 10.1. C&K's arguments that Clause 10.1 should not apply are not persuasive. Clause 10.1 specifically states that it applies "[n]otwithstanding anything else contained" in the Charter Agreement, and so it applies notwithstanding Clause 20's reference to salvage. Furthermore, interpreting Clause 10.1 in the manner proposed by Ridge Contracting does not render meaningless the general average clause. There might be circumstances in which there is no loss or damage to C&K's property (making Clause 10.1 inapplicable), and yet salvage services are nevertheless required (making Clause 20 applicable).[58] Ridge Contracting provides two such examples: "if the ARIES . . . ran out of fuel, and the flotilla was in peril as a result" or "if the ARIES was unable to

---

[55] Docket 78-3 at 13 (Charter Agreement, Cl. 20).

[56] Docket 77 at 5 (C&K Memo. in Support of Mot. for Summary Judgment).

[57] *Id.* at 17.

[58] Docket 80 at 13-14 (Ridge Contracting Opp'n to C&K Mot.).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 12 of 38

navigate safely due to weather conditions and required the assistance of a salvage tug," then "Ridge Contracting would be required to pay for salvage services, but the indemnity provision would not be triggered."[59]

C&K also asserts that Ridge Equipment is not entitled to indemnification under the Charter Agreement because it is not a party to the Charter Agreement.[60] Ridge Contracting responds that this argument is premature because Ridge Equipment has not sought indemnification from C&K, although they add that if Ridge Equipment did seek indemnification, C&K would be required to indemnify it.[61] The Court finds that any determination of this issue is premature and will not address it at this time.

Accordingly, the Court will deny C&K's motion at Docket 76 for summary judgment dismissing Ridge Contracting's claim for indemnification. The Court will grant Ridge Contracting's motion for summary judgment at Docket 83 with respect to C&K's duty to indemnify. Ridge Contracting is entitled to be indemnified, protected, defended, and held harmless by C&K from all claims, costs, expenses, and liabilities incurred as a result of the salvage claims against Ridge Contracting in this action. The scope of such indemnification and associated rights is to be determined at trial.[62]

---

[59] *Id.* at 11-14; Docket 83 at 19 (Ridge Mot.).

[60] Docket 77 at 16-17 (C&K Memo. in Support of Mot. for Summary Judgment).

[61] Docket 80 at 14 (Ridge Contracting Opp'n to C&K Mot.).

[62] The conclusion here that C&K is required to indemnify, protect, defend, and hold harmless Ridge Contracting may affect the significance of the Court's decision on Ridge Contracting's breach of contract claims, discussed *infra*. The interplay of these determinations and how it may affect the parties' financial obligations is not yet before the Court.

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 13 of 38

## II. Salvage (Motions at Dockets 83 and 96).

C&K, Tug Blarney, and the Crew seek a salvage reward from the Ridge Defendants. At Docket 96, they move for partial summary judgment on the issue of "pure" salvage.[63] At Docket 83, the Ridge Defendants move for partial summary judgment dismissing all salvage claims against the Ridge Defendants. The Ridge Defendants have since clarified, however, that only Ridge Equipment, not Ridge Contracting, seeks summary judgment on the Crew's claims for salvage.[64]

The Ridge Defendants assert various defenses to the salvage claims, including: (a) the parties to the Charter Agreement agreed that salvage would be paid at a contracted rate, and so a claim for "pure" salvage is barred and a claim for pure salvage would nevertheless fail; (b) Tug Blarney cannot recover salvage because it had bareboat chartered the BLARNEY to C&K, and lacked control over the BLARNEY; (c) Ridge Equipment cannot be liable for salvage because it had no interest in the cargo; and (d) C&K placed the cargo in danger by utilizing the unseaworthy ARIES, so C&K "cannot . . . claim a reward for rescuing it."[65]

For the following reasons, the Court will grant the motion for salvage at Docket 96 as to the Crew, with the amount and distribution of any reward to be determined at

---

[63] The Ridge Defendants assert that the Court should strike the motion as to C&K because, after C&K's motion at Docket 76, it is C&K's second motion for summary judgment, in violation of District of Alaska Local Rule 56.1. D.Ak. L.R. 56.1 ("A motion for summary judgment must contain all the grounds upon which the moving party relies and address all causes of action or affirmative defenses raised in the pleading challenged."). But as noted by C&K, Local Rule 56.1 does not specifically address third-party complaints. Docket 105 at 3 (Salvage Claimants Reply). Therefore, C&K's motion at Docket 96 is not in strict violation of the rule. Accordingly, the Court will consider the motion on its merits.

[64] Docket 94 at 16 (Ridge Def. Reply).

[65] Docket 83 (Ridge Mot.); Docket 101 (Ridge Opp'n to Salvage Claimants Mot.).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 14 of 38

trial.  The Court will deny the motion for salvage at Docket 96 as to C&K and Tug

Blarney because of remaining material questions of fact concerning defense (d).  The

Court will deny the Ridge Defendants' motion at Docket 83 insofar as it "seek[s]

summary judgment dismissing the salvage claims asserted against them."

### A. This case concerns "pure" salvage.

"The right to a salvage award for saving a ship dates back for centuries."[66]  There

are two types of salvage claims: (1) "pure" salvage claims, where salvage services are

rendered without any prior agreement; and (2) "contract" salvage claims pursuant to a

contract.

> To establish a claim for "pure" salvage, a salvor must demonstrate:
>
> (1) a maritime peril from which the ship or other property could not have
> been rescued without the salvor's assistance; (2) a voluntary act by the
> salvor; that is, he must be under no official or legal duty to render the
> assistance; and (3) the act must be successful in saving, or in helping to
> save, at least a part of the property at risk.[67]

In *Bartholomew v. Crowley Marine Services, Inc.*, the Ninth Circuit explained that, like a

salving crewmember, the owner of a salving vessel may recover salvage "for putting an

expensive ship at risk."[68]  The owner of a salving ship may recover for salvage even if

he owns both the salving ship and the ship salvaged.  The Ninth Circuit has held that

---

[66]  *Bartholomew v. Crowley Marine Servs., Inc.*, 337 F.3d 1083, 1085 (9th Cir. 2003) (citing *The Blackwall*, 77 U.S. 1, 13 (1869)).

[67]  *Sea Tow Portland/Vancouver v. High Steaks*, No. 06-cv-985, 2007 AMC 2705, 2708 (D. Or. 2007) (citing *U.S. Dominator, Inc. v. Factory Ship Robert E. Resoff*, 768 F.2d 1099, 1104 (9th Cir. 1985), superseded by statute on other grounds).

[68]  337 F.3d at 1084.

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 15 of 38

"an exception to the general rule" of salvage in the circumstances of shared ownership is "neither required nor desirable."[69]

A salvage contract precludes a right to "pure" salvage.[70] "The existence of a salvage contract is typically raised as a defense to a pure salvage claim in order to escape the application of the more generous pure salvage award rule."[71] The party asserting the defense of a salvage contract bears the burden of demonstrating the existence of that contract.[72]

The Salvage Claimants assert that this case involves pure salvage. The Ridge Defendants assert that C&K is not entitled to a pure salvage award because the Charter Agreement between C&K and Ridge Contracting fixed the price for salvage services.[73]

Clause 20 of the Charter Agreement asserts that "[s]alvage services or assistance rendered to the venture [between C&K and Ridge Contracting] by another vessel owned by or in the service of C&K shall be paid for according to C&K's salvage rate above as fully as if such vessel were owned by or in the service of strangers."[74] But there is otherwise no indication in the Charter Agreement of that "above" rate.

---

[69] *Id.* at 1089; *see also Markakis v. S/S Volendam*, 486 F.Supp. 1103 (S.D.N.Y. 1980) (though same ship owner owned both STAR and SUN, and owner instructed crew of STAR to go to assist the stranded SUN, actions of STAR's master and crew were nevertheless voluntary for purposes of salvage).

[70] *Evanow v. M/V Neptune*, 163 F.3d 1108, 1115 (9th Cir. 1998).

[71] *Id.* at 1115 (citing *Kimes v. United States*, 207 F.2d 60, 64 (2d Cir. 1953)).

[72] *Id.*

[73] Docket 83 at 3-4 (Ridge Mot.); Docket 101 at 23-24 (Ridge Opp'n to Salvage Claimants Mot.).

[74] Docket 78-3 at 13 (Charter Agreement, Cl. 20).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 16 of 38

Furthermore, the Charter Agreement does not require that C&K actually provide salvage services to the venture.  Rather than creating a contract to provide salvage services, Clause 20 appears to do nothing more than state the rule of *Bartholomew*—that C&K would be eligible for salvage even if one of its ships performs salvage for the venture.

Accordingly, the Ridge Defendants have not demonstrated the existence of a contract for salvage services between C&K and Ridge Contracting.  The Court will deny the motion for partial summary judgment at Docket 83 with respect to its assertion that C&K is precluded by the Charter Agreement from asserting a pure salvage claim against Ridge Contracting.  The Court next addresses the three elements required to establish a right to pure salvage.

### 1.  Marine Peril.

A marine peril exists "when a vessel is exposed to any actual or apprehended danger which might result in her destruction."[75]  "[T]he peril need not be 'immediate or absolute; it is sufficient that at the time the assistance is rendered the ship has encountered any danger or misfortune which might possibly expose her to destruction if the service were not rendered.'"[76]  Whether marine peril exists is generally a question of fact.[77]

---

[75] *Evanow*, 163 F.3d at 1114 (quoting *Faneuil Advisors, Inc. v. O/S Sea Hawk*, 50 F.3d 88, 92 (1st Cir. 1995)).

[76] *F.D.S. Marine, LLC v. Shaver Transp. Co.*, No. 00-cv-1245-ST, 2001 WL 34045718, at *9 (D. Or. May 25, 2001) (quoting *The PLYMOUTH ROCK*, 9 F. 413, 416 (D N.Y. 1881)).  *See also Markakis*, 486 F.Supp. at 1108 (quoting Gilmore & Black, The Law of Admiralty, § 8-2, at 536-37 (2d ed. 1975)) ("The prototypical act (of salvage) is rescuing a ship in peril at sea and towing her to a place of safety . . . . If she was not under command, unable to navigate or to reach port unaided, the service will be considered salvage even though the ship was not in imminent danger of destruction and even though the towage itself was calm and uneventful.").

[77] *Evanow*, 163 F.3d at 1115 (citing *Clifford v. M/V Islander*, 751 F.2d 1, 5 (1st Cir. 1984)).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 17 of 38

The Ninth Circuit's decision in *Steamer Avalon Co. v. Hubbard S.S. Co.*, though decided in 1919, is instructive.[78] In that case, the Steamer Avalon lost power due to a broken crankshaft about fourteen miles off the coast of Oregon. The General Hubbard towed the Steamer Avalon to safety. The trial court concluded that "the [General Hubbard's] services were salvage services, but they were not attended by any special danger," and so awarded a low salvage reward.[79] The Ninth Circuit agreed with the trial court that the services were salvage services:

> It is evident that a disabled steamship without wireless equipment, lying in the trough of the sea, unable to keep her head up to the wind, and carrying a deckload some 16 feet high, is in some degree of peril.[80]

The Ninth Circuit remanded, however, because it concluded that the trial court's salvage award was too low. Although the Steamer Avalon's peril was "diminished" because of favorable weather conditions and because the steamer was "in an ocean path not infrequently traveled by vessels,"[81] the salvage award was inadequate to "encourage prompt, energetic, and efficient service in the relief of vessels in peril."[82]

Here, the Salvage Claimants assert the Barge's cargo was "imperiled" because "[i]t was stranded, tethered to a sunken tug, unable to be moved without assistance and

---

[78] 255 F. 854 (9th Cir. 1919).

[79] *Id.* at 855.

[80] *Id.* at 856.

[81] *Id.*

[82] *Id.*; *see also High Steaks*, 2007 AMC at 2708 (after trial, finding there was marine peril in part because ship was not under its own power, even when it was being controlled by an "electric thruster" or rescue boat); *Navigazione General Italiana v. Spencer Kellogg & Sons*, 92 F.2d 41, 44 (2d Cir. 1937) ("[W]hen a vessel is stranded she and her cargo are practically always in substantial peril. Such a vessel is helpless because she cannot pursue her intended voyage or deal effectively with any emergency which may arise.").

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 18 of 38

subject to the possibility of loss or damage unless someone came to its aid."[83]   The Ridge Defendants assert that there was no marine peril because the Barge was stationary, securely attached to the ARIES, and in no immediate danger of capsizing or sinking.[84]   The Ridge Defendants also assert that the weather conditions were favorable, which further supports that the Barge was not at risk.[85]

There may be questions of fact as to whether weather conditions were favorable, whether the ARIES acted as an adequate anchor for the Barge, and whether the Barge was in danger of sinking as a result of being holed by the ARIES.  But the Barge faced at least some marine peril because it was without power, unmanned, stranded in the Bering Sea 100 miles from shore, and unable to respond to any changing conditions. Furthermore, the Barge was tethered to the sunken ARIES, and the recovery of the towline, whenever it might occur, would involve at least some challenging work on behalf of a crew.[86]   Thus, although the scope of the marine peril in this matter involves unresolved questions of fact, there was indeed some marine peril.  This Court finds that no reasonable finder of fact could conclude otherwise.

### 2.  Voluntary Service.

A "salvor's act must be voluntary such that he must be under no official or legal duty to act."[87]   The Salvage Claimants assert that their service was voluntary because

---

[83]   Docket 97 at 22 (Memo. in Support of Salvage Claimants Mot. For Partial Summary Judgment).

[84]   Docket 101 at 6-14 (Ridge Opp'n to Salvage Claimants Mot.).

[85]   *Id.* at 10-11.

[86]   *See* Docket 90-16 at 7, 51:10-54:13 (Hilty Dep.).

[87]   *F.D.S. Marine*, 2001 WL 34045718, at *11 (quoting *U.S. Dominator*, 768 F.2d at 1104).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 19 of 38

the Charter Agreement did not require salvage, the BLARNEY had no obligation to assist in the salvage, and the Crew had discretion as to whether to engage in the salvage.[88]   The Ridge Defendants assert the services rendered by the Salvage Claimants were not voluntary because: (i) C&K and Tug Blarney had a preexisting duty to protect the Barge from loss or damage pursuant to the Sue and Labor clause in the hull and machinery insurance policy for the ARIES; (ii) C&K had a preexisting duty to redeliver the Barge in good condition to Heko Services pursuant to a bareboat charter; (iii) C&K had a preexisting duty to transport the cargo pursuant to the Charter Agreement, which also provided for contract salvage; and (iv) material questions of fact preclude summary judgment with respect to whether the service of the Crew was voluntary.[89]

> **i.  The Sue and Labor clause did not require the BLARNEY to undertake the recovery of the Ridge Defendants' cargo.**

C&K and Tug Blarney maintained a hull and machinery insurance policy for the ARIES and the BLARNEY (policy PS&F 0429).  The parties appear to agree that this insurance policy covered the Barge, as well.[90]   The policy's Sue and Labor clause states:

> In case of any loss, misfortune or potential liability it shall be lawful and necessary for the Assured, their factors, servants and assigns to sue,

---

[88]  Docket 97 at 24-29 (Memo. in Support of Salvage Claimants Mot. for Partial Summary Judgment); Docket 105 at 6-7 (Salvage Claimants Reply).

[89]  Docket 101 at 19-20, 24 (Ridge Opp'n to Salvage Claimants Mot.).

[90]  Docket 83 at 33 (Ridge Mot.) (citing W.D. Washington complaint, which provides that "Policy [PS&F 0429] insured the ARIES and the Barge KRS-240-5."); Docket 84-3 at 10 (Ex. 6 to Jones Decl.: Compl. in *Tug Blarney LLC et al. v. Nat'l Cas. Co. et al.*, No. 2:13-cv-01697-RSM (W.D. Wash., filed Sept. 19, 2013)).  *But see* Docket 84-6 at 8 (Subscription Policy PS&F 0429) (providing that BLARNEY and ARIES are vessels covered by hull and machinery policy).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 20 of 38

labor and travel to safeguard and prevent any liability, on the part of the vessel and/or Assured named herein, without prejudice to this insurance to the charges thereof this Company will contribute as hereinafter provided. It is agreed that the acts of the Assured or this Company or their agents shall not be considered as affirming or denying liability under this Policy; but such acts shall be considered as done for the benefit of all concerned and without prejudice to the rights of either party.

In the event of expenditures under this Sue & Labor clause, this Company will pay expenses incurred to avoid, reduce, and/or alleviate potential or actual liability on the part of the vessel and/or Assured named herein.[91]

The Ridge Defendants assert that C&K and Tug Blarney should be precluded from recovering for salvage from them because C&K and Tug Blarney were required to recover the Barge by the Sue and Labor clause. To support this argument, the Ridge Defendants refer the Court to the litigation pending in the Western District of Washington, in which C&K and Tug Blarney make various claims, including claims for reimbursement, from various defendant insurance companies for the BLARNEY's efforts to recover the Barge.[92]

There is limited Ninth Circuit precedent on the issue of when preexisting duties might preclude a claim for salvage, but the Southern District of New York has acknowledged that "[a]lthough there are instances in which a would-be salvor's pre-existing duty to act defeats his claim, those cases are rare."[93] The Ridge Defendants cite the District of Oregon's decision in *F.D.S. Marine, LLC v. Shaver Transportation*

---

[91] Docket 84-6 at 12 (Subscription Policy PS&F 0429).

[92] Docket 83 at 32-33 (Ridge Mot.); Docket 84-3 at 10 (Ex. 6 to Jones Decl.: Compl. in *Tug Blarney LLC et al. v. Nat'l Cas. Co. et al.*, No. 2:13-cv-01697-RSM).

[93] *Markakis*, 486 F.Supp. at 1108. An oft cited case is the Fifth Circuit's 1893 decision in *Firemen's Charitable Ass'n v. Ross*, which concluded that a fireman who helped extinguish a blaze upon a ship was precluded from a salvage award because of his employment. 60 F. 456, 458-59 (5th Cir. 1893).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 21 of 38

*Company*, asserting that it supports the proposition that "*any* pre-existing duty to care for or safeguard salved property will preclude a salvage award."[94]  But *F.D.S. Marine* does not support the broad conclusion for which the Ridge Defendants cite it.  In *F.D.S. Marine*, a ship owner had hired a repair yard to work on a ship.  The repair yard conducted repairs, but was unable to launch the ship back to sea because of broken launch "ways."  The repair yard hired a diving company, which repaired the ways.  The diving company sought salvage from the ship owner.  The court concluded that the diving company had demonstrated marine peril because if the ship was re-launched, "it was in danger of de-railing and settling in the river, causing a potential constructive total loss."[95]  However, the court held that the diving company could not demonstrate that it had acted voluntarily because it had a contract to repair the ways.  The court explained, "[the diving company] repaired the ways only because [the repair yard] requested its assistance."[96]  *F.D.S. Marine* did not involve a sue and labor clause.

Here, the ARIES sank, while the Barge remained afloat.  Even if the Sue and Labor clause were to be interpreted to require that C&K and Tug Blarney attempt to recover the Barge, that clause did not require that they attempt to recover the Ridge Defendants' cargo.  Thus, the Sue and Labor clause did not create a preexisting duty for C&K or Tug Blarney to either of the Ridge Defendants that contractually obligated the BLARNEY to undertake the recovery of the Ridge Defendants' cargo.

---

[94]  Docket 83 at 31 (citing *F.D.S. Marine*, 2001 WL 34045718, at *11) (emphasis added).

[95]  *F.D.S. Marine*, 2001 WL 34045718, at *10.

[96]  *Id.* at *11.

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 22 of 38

The Ridge Defendants have not otherwise provided any authority that a sue and labor clause in a hull insurance policy requires a ship owner to send its ship to assist in the recovery of cargo on the insured vessel. And this argument seems inconsistent with the Ninth Circuit's decision in *Bartholomew*, where it held that it is irrelevant to a potential salvage award whether a salving ship is owned by the same owner as the salvaged ship.[97] Presumably, most ships are insured. *Bartholomew* makes no mention of insurance, and generally seems to support this Court's conclusion.[98]

### ii. The bareboat charter with Heko Services did not require C&K to send the BLARNEY to recover the Ridge Defendants' cargo.

The Ridge Defendants assert that C&K had a preexisting duty to recoup the Barge because of its bareboat charter with Heko Services.[99] The bareboat charter includes no such clause. The bareboat charter provides that the Barge might incur a liability for salvage, and also that "[i]n the event of a salvage award explicitly to the [Barge], such award shall be shared" by Heko Services and C&K. But the Ridge Defendants point to no language in that charter that would require C&K itself to salvage either the Barge or the Barge's cargo if the Barge faced marine peril.

---

[97] *See Bartholomew*, 337 F.3d at 1089.

[98] *Bartholomew* also supports rejecting the Ridge Defendants' assertion that "Tug Blarney LLC acted only at the request of C&K, and was therefore not acting as a volunteer." Docket 101 at 20 (Ridge Opp'n to Salvage Claimants Mot.).

[99] Docket 84-2 at 28 (Standard Bareboat Charter between Heko Services and C&K).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 23 of 38

### iii. The Charter Agreement between C&K and Ridge Contracting did not require C&K to salvage Ridge Contracting's cargo.

The Charter Agreement required C&K to transport certain cargo for Ridge Contracting. But as the Court concluded in section II.A above, the Charter Agreement did not include a contract for salvage services.

### iv. The Crew acted voluntarily for purposes of salvage.

A crew "could not properly . . . be[] required by their vessel master to put themselves in danger" through a salvage operation when they are not trained to perform such work and are not contracted to perform such work.[100] Here, the Crew creatively severed the ARIES' towline and reattached it to the BLARNEY to tow the Barge to port. At his deposition, Captain Hilty stated that Mr. Kennedy instructed the Crew "to leave immediately" to go to assist the BLARNEY,[101] while crewmember Kenoyer stated that any member of the Crew "could have called the entire operation off and . . . just left."[102] Regardless of the apparent discrepancy, Mr. Kennedy's instruction does not alter the Crew's abilities to make decisions concerning their safety and job duties. There is no evidence that the Crew was contracted for salvage, and the Court concludes that the Crew acted voluntarily.

### 3. Success.

"A salvage award is proper where there was '[s]uccess in whole or in part, or that the service rendered contributed to such success."[103] Success has been defined as

---

[100] *Bartholomew*, 337 F.3d at 1087.

[101] Docket 90-16 at 4, 38:25-40:6 (Hilty Dep.).

[102] Docket 99-2 at 2, 50:17-22 (Kenoyer Dep.).

[103] *Evanow*, 163 F.3d at 1115 (quoting *The "Sabine"*, 101 U.S. 384, 384, 25 L.Ed. 982 (1879)).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 24 of 38

"preservation of the property for the benefit of the owner."[104]  "[T]he purpose of a salvage effort is to save the vessel and its cargo, not to bring the vessel to a certain location."[105]

Ridge Contracting asserts the salvage services rendered were not successful because the BLARNEY initially took the Barge to Nome, which "was not suitable as a place of safety," and because the cargo was not accessible to the Ridge Defendants for several weeks.[106]  But the parties do not dispute that the Ridge Defendants' cargo on the Barge was ultimately delivered in essentially the same condition as it was in when loaded onto the Barge.[107]  Whether Nome was the best port option, and whether there was a delay before the cargo was delivered, does not negate that the BLARNEY successfully assisted in the transport of the goods to their final destination.

## B. The bareboat charter between C&K and Tug Blarney does not preclude Tug Blarney's recovery.

In May 2009, Tug Blarney and C&K entered into a standard bareboat charter with a five-year term.[108]  The Ridge Defendants assert that Tug Blarney is not entitled to salvage because it "contracted away" any risk related to the BLARNEY through the bareboat charter.[109]  In the bareboat charter, C&K agreed to, "at its sole expense, man,

---

[104]  *Id.* at 1115 (quoting 3A Martin J. Norris, *Benedict on Admiralty* § 90 (7th ed. 1993) and *U.S. Dominator*, 768 F.2d at 1104).

[105]  *Evanow*, 163 F.3d at 1115.

[106]  *See* Docket 101 at 26-28 (Ridge Opp'n to Salvage Claimants Mot.).

[107]  *See* Docket 90-19 at 7-8 (Ex. S to Scheer Decl. #2, Response to Interrogatory No. 4).

[108]  *See* Docket 84-2 at 37 (Standard Bareboat Charter between Tug Blarney and C&K).

[109]  Docket 83 at 34-35 (Ridge Mot.); Docket 94 at 20-21 (Ridge Reply).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 25 of 38

fuel, victual, navigate, operate, maintain and supply the [BLARNEY] and . . . pay all charges and expenses of every kind and nature whatsoever relating to the [BLARNEY] and its use and operation during th[e] Charter."[110]  The parties agree that through the bareboat charter, Tug Blarney ceded "possession, control and management" of the BLARNEY to C&K.[111]  However, the bareboat charter also provides: "Salvage: All derelicts and salvage shall be for the equal benefit of [Tug Blarney] and [C&K], after deducting [C&K's] actual expenses related thereto."[112]  Accordingly, the bareboat charter does not preclude Tug Blarney's right to salvage to the extent any is due, which is an issue for trial.

### C. Ridge Equipment's defense based on its lack of interest in the cargo is unpersuasive.

Ridge Equipment is a holding company for Ridge Contracting.[113]  At Docket 83, the Ridge Defendants assert that Ridge Equipment cannot be liable for salvage because it "did not bear the risk of loss or damage for any cargo aboard the barge," and "did not have any ownership interest at all in the majority of the property allegedly salved."[114]  Rather, "[o]nly twelve pieces of property [on the Barge] were identified as

---

[110]  *See id.*

[111]  Docket 47 at 5 ¶ 16 (C&K Answer to Third-Party Compl. and Counterclaim); Docket 51 at 2 ¶ 16 (Answer).

[112]  *See* Docket 84-2 at 37, 42 (Standard Bareboat Charter between Tug Blarney and C&K).

[113]  Docket 78-2, 56:12-20 (Ex. B to Scheer Decl.: McLaughlin Dep.).

[114]  Docket 83 at 30 (Ridge Mot.); *see also* Docket 90-19 at 6 (Ridge Contracting Interrogatory Objections, Answers, and Responses) ("Ridge[ Contracting's] ownership interest in the Cargo is in the form of a leasehold interest.").

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 26 of 38

owned by Ridge Equipment," and those had been leased to Ridge Contracting.[115]  C&K asserts that, even if the equipment was leased, both the owner and lessee can be liable for salvage.[116]

In *San Francisco Bar Pilots v. Vessel Peacock*, the Ninth Circuit held:

> It is a well-established rule of American salvage law that anyone who may be liable for the loss of or damage to property is liable for an award for its salvage.  Thus, a bailee of property may be held liable for a salvage award.  Therefore, liability for a salvage award properly extends against one who has a direct pecuniary interest in the property which is the subject of the award.[117]

The court further held that, "[w]here the existence of a direct pecuniary interest in property has been established, it is error for the trial court to deny a salvage award."[118]

As noted by C&K, Ridge Equipment seeks to use the *San Francisco Bar Pilots* case to *limit* salvage liability to lessees, but it actually *extended* salvage liability to lessees.[119]  Ridge Equipment's interest in the cargo may be limited, but Ridge Equipment is nevertheless the owner of at least some of the property.  While a salvage award against Ridge Equipment for that property in which it had *no* interest is unwarranted, Ridge Equipment is not entitled to summary judgment dismissing all salvage claims against it.

---

[115]  Docket 84-9 at 2, at 7:4-26:1 (Ex. 9 to Jones Decl.: McLaughlin Dep.); Docket 84-9 (Ex. 9 to Jones Decl.: Summary Appraisal Report of Machinery and Equipment).

[116]  Docket 89 at 38-39 (Salvage Claimants Opp'n to Ridge Mot.).

[117]  733 F2.d 680, 682 (9th Cir. 1984) (internal citations omitted).

[118]  *Id.* (internal citations omitted).

[119]  Docket 89 at 38-39.

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 27 of 38

**D. Questions of fact preclude summary judgment concerning whether C&K placed the cargo in danger by utilizing an unseaworthy vessel.**

The Ridge Defendants assert that C&K is not entitled to salvage because it caused or contributed to the marine peril by utilizing an unseaworthy vessel.[120] *The Clarita* supports that this could be a legitimate defense to a salvage claim.[121] Material questions of fact preclude summary judgment on this issue. And if it is determined that Tug Blarney may recover salvage only through the bareboat charter with C&K, this may preclude Tug Blarney's ability to recover, as well. The Court addresses this in further detail In Section III.A below, concerning breach of contract.

## III. Breach of Contract (Motions at Dockets 76 and 83).

Ridge Contracting's third-party complaint asserts a claim for breach of contract against C&K.[122] The pleading asserts that C&K breached the Charter Agreement in various ways:

(1) C&K breached Clause 10.1 by failing to indemnify, protect, defend, and hold harmless Ridge Contracting. This is addressed in section I above.

(2) C&K breached Clause 11, which required C&K to "maintain the Tug tight, staunch, strong in good order and condition," and "the unexplained sinking of the ARIES may give rise to a presumption of unseaworthiness."[123]

---

[120]  Docket 83 at 35 (Ridge Mot.).

[121]  *The Clarita*, 90 U.S. 1, 9-10 (1875) (noting that whether a tug was entitled to salvage for saving a schooner from a fire depended on whether the tug wrongfully caused the schooner to be set on fire).

[122]  Docket 42 (Ridge Contracting Third-Party Compl.).

[123]  *Id.* (quoting Charter Agreement, Cl. 11).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 28 of 38

> (3) C&K breached Clause 2 by failing to complete the four phases of transport.[124]

The Ridge Defendants' motion at Docket 83 seeks relief on these grounds, and also asserts:

> (4) C&K breached the Charter Agreement by seeking "pure" salvage when salvage is accounted for in the Charter Agreement. This is addressed in section II above.

> (5) C&K breached the Charter Agreement by failing to obtain and maintain insurance.

C&K moves for summary judgment dismissing Ridge Contracting's breach of contract claim on the bases that the ARIES was in seaworthy condition, and that the Charter Agreement excused C&K's performance under the *force majeure* clause.[125] The Court addresses each of the alleged breaches and defenses below.

## A. Breach of Contract as to Seaworthiness (Motions at Dockets 76 and 83).

### 1. Allegations Concerning Due Diligence and Seaworthiness of the ARIES.

The parties dispute whether the ARIES was seaworthy when it began its journey from Dutch Harbor to Nome. C&K presents evidence of what it describes as its "due diligence" to confirm seaworthiness, and the Ridge Defendants present evidence concerning mechanical and other problems aboard the ARIES:

- Prior to C&K's purchase of the ARIES, the Coast Guard examined the tug and posted a sticker in its pilot house, valid through February 2013, stating that the ARIES passed the Coast Guard's safety test.[126]

- When Mr. Kennedy finalized purchase of the ARIES in May 2011, he performed a survey of the boat over a two-day period in Portland, Oregon.[127]

---

[124] *Id.* at 4.

[125] Docket 76 (C&K Mot.).

[126] *See* Docket 78-5 at 16 (Ex. E to Scheer Decl. #1: Condition and Valuation Survey).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 29 of 38

He operated the ARIES up and down a river in Portland and took the vessel on what he described as a 38 hour "shakedown cruise" from Portland to Seattle.[128]   Mr. Kennedy found the tug to be in "excellent operational condition."[129]

- On May 15, 2011, Rodger Morris from the National Association of Marine Surveyors performed a "pier side" inspection of the ARIES for purposes of obtaining insurance for the ARIES.[130]   He concluded that the boat was in "good condition," and testified that it "looked like a great boat to [him]."[131]

- On May 17, 2011, James Hicks, owner of Aqua Dive Services, performed an underwater visual inspection of the ARIES' hull.[132]   Through a live-feed underwater video, a person on shore simultaneously viewed the inspection site while Mr. Hicks performed the underwater inspection.[133]  Mr. Hicks found the ARIES was a missing shoe and pintle, which he repaired.[134]

- While in Seward, Alaska, Mr. Kennedy learned that the "the watertight doors [on the ARIES] nee[ed] new rubber" and that the tug needed a new gearbox.[135]  Those repairs were made in Seward.

- While the ARIES was docked in Seward, Captain Mike Church fell from the pier, hit his head, and ultimately died.[136]  Replacement Captain Douglas Pine conducted a visual inspection of the ARIES, and concluded that he was "comfortable operating the vessel with the crew on board."  Captain Pine also

---

[127]   *See* Docket 78-1 6, 39:11-40:25 (Ex. A to Scheer Decl. #1, Kennedy Dep.).

[128]   *Id.*

[129]   *Id.*

[130]   *See* Docket 78-5 at 3, 6, 11:16-12-1 (Ex. E to Scheer Decl. #1: Morris Dep.).  A pier side inspection means that the boat was afloat, so Morris could not survey it below the water line.

[131]   *Id.* at 12:2-6, 12:19-21, 22:25-23:3; Docket 78-5 at 6, 16 (Ex. E to Scheer Decl. #1: Condition and Valuation Survey).

[132]   Docket 78-7 at 6, 23:5-24:10 (Ex. G to Scheer Decl. #1: Hicks Dep.).

[133]   *Id.* at 5, 17:16-18:19.

[134]   *Id.* at 6, 24:11-27:11.

[135]   Docket 84-2 at 5, 40:18-41:10 (Ex. 2 to Jones Decl.: Kennedy Dep.).  A gearbox is the connection between the engine and the propeller shaft.  *Id.*

[136]   *Id.* at 6, 45:17-46:10.

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 30 of 38

conducted "sea trials" and drills with the ARIES, and found she "was ready to take on . . . the task that she had been assigned."[137]

- While docked in Dutch Harbor, one of the ARIES deckhands was injured when an ARIES tow wire came loose and hit him in the cheek.[138]

- Russell Johnson, engaged as an expert witness by counsel for the Ridge Defendants, had personal experience with the ARIES, but only between 1997 and 2000.[139] Mr. Johnson believed the ARIES was seaworthy at that time, but this dated opinion merits little weight.

- On June 26, 2011, the ARIES sank. On that day, the seas were eight to ten feet, the winds were twenty-five knots out of the southeast, and visibility was good.[140] Captain Pine testified that these weather conditions should have been within the ARIES' operational capabilities.[141] There is no conclusive explanation as to why the vessel sank.

**2. Questions of fact preclude summary judgment as to whether C&K breached the Charter Agreement by failing to exercise due diligence and maintain the ARIES in seaworthy condition (Motions at Dockets 76 and 83).**

The Ridge Defendants move for summary judgment on the basis that C&K breached the Charter Agreement by utilizing an unseaworthy vessel.[142] The Ridge Defendants state that an "unexplained sinking gives rise to a presumption of unseaworthiness."[143] In contrast, C&K asserts,"[t]here can be no dispute that C&K was

---

[137] Docket 78-8 at 5-6, 71:6-73:22 (Ex. H to Scheer Decl. #1: Pine Dep.).

[138] *See* Docket 84-12 at 3, 41:23-42:24 (Ex. 12 to Jones Decl.: Pine Dep.).

[139] Docket 78-9 at 3, 20:12-19 (Ex. I to Scheer Decl. #1: Johnson Dep.).

[140] Docket 81-4 at 3-4, 44:7-45:8, 47:3-24 (Ex. 4 to Jones Decl.: Pine Dep.).

[141] *Id.*

[142] Docket 83 at 35 (Ridge Mot.).

[143] *Id.* (citing *Compagnie Maritime Francaise v. Meyer*, 248 F.881, 883 (9th Cir. 1918)).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 31 of 38

diligent in its efforts to make the ARIES seaworthy."[144] C&K asserts that the presumption of unseaworthiness is rebuttable.[145]

The Court need not determine, at this point, the standard for determining seaworthiness, or on which party the burden rests.[146] For in any event, material questions of fact concerning C&K's due diligence as to the seaworthiness of the ARIES preclude summary judgment. Although C&K describes its various inspections of the ARIES, the vessel also required several repairs, and at least one injury and one death occurred on the ship. And the vessel ultimately sank in calm seas. Accordingly, the Court will deny the motions for summary judgment at Dockets 76 and 83 with respect to the breach of contract claims related to the seaworthiness of the ARIES.

### B. The Ridge Defendant's claim for breach of contract for failure to transport the cargo and C&K's *force majeure* and related defenses (Motions at Dockets 76 and 83).

The Ridge Defendants assert that C&K breached Charter Agreement Clauses 1-6 because C&K failed to complete Phase I of the Charter Agreement which required transporting and delivering Ridge Contracting's cargo to Alakanuk, and C&K did not perform Phases II-IV.[147] In its answer, C&K asserts that it was excused from

---

[144] Docket 89 at 21 (Salvage Claimants Opp'n to Ridge Mot.).

[145] *Id.* at 21-22.

[146] The Court invites further briefing on this standard in the trial briefs. *Waltson v. Lambertsen* may be helpful. 349 .F2d 660, 661-62 (9th Cir. 1965) (The presumption that "if a claimant establishes that a vessel is unseaworthy, the trial court may presume that the unseaworthiness was the proximate cause of the sinking, otherwise unexplained, of a vessel in calm seas . . . has been indulged only when the claimant has been able to establish to the satisfaction of the trial court that the vessel was unseaworthy at the time it departed on its last voyage. The sea itself contains many hazards, and an inference of liability of the shipowner for the mysterious loss of his vessel should not be lightly drawn.").

[147] Docket 83 at 23 (Ridge Mot.).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 32 of 38

performance by "act of god, peril of the sea and force majeure."[148]  In the briefing on the motion at Docket 76, C&K asserts that the sinking of the ARIES was a *force majeure* event that excused its performance, and that "the sinking of the ARIES made it impossible for C&K to perform the Charter [Agreement]."[149]

The Charter Agreement's *force majeure* clause provides:

> 21.  Force Majeure: Neither C&K nor the Tug shall be responsible for any loss or damage, or delay or failure in performing hereunder arising from: act of God, act of war, act of public enemies, pirates or thieves, arrest or restraint of princes, rulers, dictators, or people, or seizure under legal process . . .; strikes or lockouts or stoppages or restraints of labor from whatever cause, either partial or general; or riot or civil commotion.[150]

This *force majeure* clause is limited to specific events.  But C&K suggests that the *force majeure* clause should be read more broadly, like the *force majeure* clause in *Facto v. Pantagis*, a 2007 decision from the Superior Court in New Jersey, which excused a ship's performance after a bench trial because of a power failure.[151]  But in *Facto*, the *force majeure* clause provided that performance would be excused if "prevented . . . by an act of God (e.g., flood, power failure, etc.), or other unforeseen events or circumstances."[152]  The New Jersey court suggested that *force majeure* might apply to circumstances not specifically referenced in the contract, but ultimately that court relied on the precise words of the contract that excused performance for a power failure.  C&K

---

[148]  Docket 47 at 3 (C&K Answer to Third-Party Compl. and Counterclaim).

[149]  Docket 77 at 21-22 (C&K Memo. in Support of Mot. for Summary Judgment).

[150]  Docket 78-3 at 13 (Charter Agreement, Cl. 21).

[151]  *See* Docket 77 at 21; *Facto v. Pantagis*, 390 N.J. Super 227, 228 (N.J. Super. Ct. App. Div. 2007).

[152]  *Facto*, 390 N.J. Super at 228.

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 33 of 38

has provided no compelling authority that the unexplained sinking of a ship qualifies as an act of God under the *force majeure* clause. Accordingly, the Court will deny C&K's motion at Docket 76 to dismiss the breach of contract claim based on a *force majeure* defense.

C&K also suggests that a *force majeure* clause is "nearly identical to the defense of commercial frustration."[153] C&K does not suggest a legal standard for the defense of commercial frustration, but cites to *Wong Wing Fai Co. v. United States* for the proposition that "[f]rustration of a charter party is a change of conditions so radical that accomplishment of the commercial object of the charter is made impossible."[154] *Wong Wing* notes that "American courts have found charters frustrated . . . when the ship has been destroyed."[155] The Ridge Defendants state the legal defense of commercial frustration requires: "(1) an unexpected contingency; (2) no allocation of risk either express or implied; and (3) commercial impracticability of performance."[156] The Ridge Defendants assert that C&K cannot satisfy these requirements.[157]

The Court need not determine the standard for commercial impracticability at this juncture because material questions of fact preclude summary judgment under either approach advocated by the parties. For instance, the parties dispute whether the

---

[153] Docket 77 at 21-22 (C&K Memo. in Support of Mot. for Summary Judgment).

[154] Docket 85 at 12 (C&K Reply) (citing *Wong Wing Fai Co. v. United States*, 840 F.2d 1462, 1471 (9th Cir. 1988); Docket 89 at 22-23 (same).

[155] *Wong Wing*, 840 F.2d at 1471.

[156] Docket 80 at 29 (citing *Denali Seafoods, Inc. v. W. Pioneer, Inc.*, 492 F.Supp. 580, 582 (W.D. Wash. 1980)).

[157] *Id.*

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 34 of 38

sinking of the ARIES made performance of the contract impracticable. The Ridge Defendants assert that C&K was required to perform the Charter Agreement regardless of the fate of the ARIES because the agreement required only that C&K "mobilize" one of a "number of ocean going tugs and barges" owned by C&K. But C&K presents evidence that C&K purchased the ARIES specifically to perform the Charter Agreement, and that Ridge Contracting knew this "right about the time [it] was signing [the] contract."[158] Accordingly, the Court will deny the motion for summary judgment at Docket 83 on this aspect of the breach of contract claim based on a failure to transport. But the Court will not preclude C&K from asserting at trial the defense of commercial frustration.[159] Because the Court will deny summary judgment, it will not evaluate damages or the arguments concerning the mobilization fee at this juncture.

### C. Breach of Contract as to Insurance (Motion at Docket 83).

Clause 18 of the Charter Agreement provides that "C&K and Ridge [Contracting] agree to obtain and maintain insurance with reputable underwriters, on recognized insuring forms, the type and amount of coverages stated in Exhibit D of th[e Charter] Agreement."[160] Exhibit D requires that C&K obtain "[c]omprehensive General Liability Insurance, including contractual liability coverage for C&K's obligations hereunder to defend and/or indemnify Ridge."[161]

---

[158] Docket 85 at 13 (C&K Reply); Docket 86-3 at 23-24, 27:24-28:2 (Ex. C to LaRiviere Decl.: McLaughlin Dep.).

[159] The Court invites further briefing on this issue in the trial briefs.

[160] Docket 78-3 at 12 (Charter Agreement, Cl. 18).

[161] *Id.* at 20-21 (Charter Agreement, Ex. D).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 35 of 38

The Ridge Defendants assert that C&K breached this clause of the contract by failing to maintain insurance for its obligation to indemnify Ridge Contracting.[162] The Ridge Defendants further assert that throughout discovery, the Ridge Defendants have requested that "C&K identify every insurance agreement that might provide coverage for Ridge Contracting's claims for indemnity from C&K," and that C&K responded that it had only a single insurance policy that might cover indemnity, PS&F 0429.[163] C&K responds that it did not agree to indemnify Ridge Contracting for salvage claims, and thus "whether C&K obtained insurance to cover [Ridge] Contracting's indemnification claim is irrelevant."[164] C&K further asserts that it obtained appropriate insurance, and that the policy purchased by C&K "is being used to finance [Ridge] Contracting's defense and the prosecution of its Third-Party Complaint for indemnification."[165]

In sum, Ridge Contracting asserts that C&K did not purchase appropriate insurance, while C&K asserts that the insurance it purchased was adequate. The insurance policy in the record includes several clauses concerning indemnification, but a letter from an attorney for the insurance companies suggests that the policy was not intended to cover the type of indemnification sought by Ridge Contracting.[166] The Court

---

[162] Docket 83 at 25 (Ridge Mot.).

[163] *Id.*; *see also* Docket 84-8 at 4-5 (C&K Responses to Ridge Contracting Interrogatories) ("The only policy which might provide coverage is PS&F 0429. Unfortunately, Underwriters refused coverage."); Docket 84-6 at 2 (Subscription Policy PS&F 0429); Docket 84-8 at 12 (3/11/13 Letter Insurers to Scheer).

[164] Docket 89 at 25-26 (Salvage Claimants Opp'n to Ridge Mot.).

[165] *Id.*

[166] *Compare* Docket 84-6 (Subscription Policy PS&F 0429) *with* Docket 84-8 (3/11/13 Letter Insurers to Scheer).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 36 of 38

is unable to determine, based on this record, whether C&K has breached the Charter Agreement by providing insurance only through policy PS&F 0429.

C&K also asserts that because Ridge Contracting is benefiting from the insurance, it cannot demonstrate that it suffered any damages—a requirement for a breach of contract claim—even if C&K had breached the contract.[167]  The Ridge Defendants respond that they may have nevertheless suffered damages because this case involves a "partially subrogated loss," and because the Ridge Defendants may be liable for the insurance deductible.[168]  But from the current record, it is unclear to the Court which party, if any, has paid the deductible.  Accordingly, material questions of fact preclude summary judgment, and the Court will deny the motion on this ground.

## CONCLUSION

For the foregoing reasons, the Court finds:

1. Third-Party Defendant C&K's motion at Docket 76 for summary judgment seeking dismissal of Ridge Contracting's third-party complaint against C&K, including its claims for indemnification and breach of contract, is **DENIED.**

2. At Docket 83, the Ridge Defendants move for partial summary judgment on Ridge Contracting's claim against C&K for breach of contract, dismissing C&K and Tug Blarney's salvage claims against the Ridge Defendants, and dismissing the Crew's salvage claims against Ridge Equipment:

      a. C&K is required to indemnify, protect, defend, and hold harmless Ridge Contracting from the salvage claims asserted in this action. Accordingly, the Court **GRANTS** the motion with respect to Ridge

---

[167]  Docket 89 at 27-28 (Salvage Claimants Opp'n to Ridge Mot.).

[168]  Docket 94 at 12-13 (Ridge Reply).

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 37 of 38

Contracting's interpretation of Clause 10.1. The extent of any breach of this clause of the contract and the scope of damages is to be determined at trial.

    b. With respect to Ridge Contracting's request for summary judgment on its other breach of contract claims, as well as the Ridge Defendants' motion for summary judgment dismissing the salvage claims, the Court **DENIES** the motion.

3. The Salvage Claimant's motion at Docket 96 for summary judgment on the pure salvage claims asserted against the Ridge Defendants is **GRANTED** with respect to the Crew, with the amount and distribution of salvage to be determined at trial. The motion is **DENIED** with respect to C&K and Tug Blarney because there are material questions of fact as to the ARIES' seaworthiness.

DATED this 16th day of April 2014, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
United States District Judge

3:12-cv-00097-SLG, *Tug Blarney, LLC et al. v. Ridge Contracting, Inc. et al.*
Order re Motions for Summary Judgment
Page 38 of 38